**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE: GLUCAGON-LIKE PEPTIDE-RECEPTOR AGONISTS (GLP-1 RAS) PRODUCTS LIABILITY LITIGATION (No. II)** | **MDL DOCKET NO. _____** |

**BRIEF IN SUPPORT OF ELI LILLY AND COMPANY'S
<u>MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407</u>**

# TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION** ................................................................................................ 1

II.     **BACKGROUND** ................................................................................................ 2

     A.     Lilly's GLP-1 Medicines. .......................................................................... 2

     B.     The Creation And Management Of MDL 3094 ......................................... 3

     C.     The NAION Cases. ................................................................................... 5

III.    **LEGAL STANDARD** ....................................................................................... 9

IV.    **ARGUMENT** ..................................................................................................... 9

     A.     The Requirements Of 28 U.S.C. § 1407 Are Satisfied. ........................... 9

         1.     There Are Common Questions Of Fact. ...................................... 9

         2.     Centralization Will Serve Convenience And Efficiency. ........... 10

     B.     The NAION Actions Should Be Centralized Before The Honorable Karen S. Marston In The Eastern District Of Pennsylvania. ............................ 13

         1.     Judge Marston Is Uniquely Qualified To Manage The NAION Cases. ......................................................................................... 13

         2.     The NAION Issue Is Different Than The Prior DVT Request. ............... 17

         3.     The Eastern District Of Pennsylvania Is A Convenient Venue. ............... 19

V.      **CONCLUSION** ............................................................................................... **20**

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*,
  637 F. Supp. 3d 1372 (J.P.M.L. 2022)..............................................................................10, 19

*In re AndroGel Prods. Liab. Litig.*,
  24 F. Supp. 3d 1378 (J.P.M.L. 2014)........................................................................................18

*In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
  730 F. Supp. 3d 1371 (J.P.M.L. 2024)......................................................................................12

*In re Bard Implanted Port Catheter Prods. Liab. Litig.*,
  698 F. Supp. 3d 1381 (J.P.M.L. 2023)......................................................................................16

*In re Covidien Hernia Mesh Prods. Liab. Litig.*,
  607 F. Supp. 3d 1356 (J.P.M.L. 2022).....................................................................................2, 12

*In re Effexor (Venlafaxine Hydrochloride) Prods. Liab. Litig.*,
  959 F. Supp. 2d 1359 (J.P.M.L. 2013)......................................................................................15

*In re Eliquis (Apixaban) Prods. Liab. Litig.*,
  282 F. Supp. 3d 1354 (J.P.M.L. 2017)......................................................................................12

*In re Fluoroquinolone Prods. Liab. Litig.*,
  122 F. Supp. 3d 1378 (J.P.M.L. 2015).................................................................................13, 15

*In re Generic Pharm. Pricing Antitrust Litig.*,
  2017 WL 4582710 (J.P.M.L. Aug. 3, 2017).........................................................................12, 13

*In re GLP-1 RAs Prods. Liab. Litig.*,
  2025 WL 2394047 (E.D. Pa. Aug. 15, 2025)........................................................................4, 15

*In re GLP-1 RAs Prods. Liab. Litig*,
  2025 WL 2396801 (E.D. Pa. Aug. 15, 2025)............................................................................4

*In re GLP-1 RAs Prods. Liab. Litig.*,
  717 F. Supp. 3d at 1370 (J.P.M.L. 2024)....................................................... *passim*

*In re GLP-1 RAs Prods. Liab. Litig.*,
  766 F. Supp. 3d 1328 (J.P.M.L. 2024).................................................................................17, 18

*In re Ins. Brokerage Antitrust Litig.*,
  360 F. Supp. 2d 1371 (J.P.M.L. 2005)........................................................................................9

ii

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.,*
220 F. Supp. 3d 1356 (J.P.M.L. 2016)......................................................16

*In re Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Pracs. Litig.,*
26 F. Supp. 3d 1392 (J.P.M.L. 2014)......................................................15

*In re Paraquat Prods. Liab. Litig.,*
544 F. Supp. 3d. 1373 (J.P.M.L. 2021)......................................................13

*In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prods. Liab. Litig.,*
996 F. Supp. 2d 1380 (J.P.M.L. 2014)......................................................19

*In re Phenylephrine Mktg & Sales Pracs. Litig.,*
709 F. Supp. 3d 1380 (J.P.M.L. 2023)......................................................17

*In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II),*
923 F.Supp.2d 1376 (J.P.M.L 2013)......................................................12

*In re Suboxone (Buprenorphine/Naloxone) Film Mktg., Sales Pracs., and Products Liab. Litig.,*
717 F. Supp. 3d 1376 (J.P.M.L. 2024)......................................................10, 12, 17

*In re Tasigna (Nilotinib) Prods. Liab. Litig.,*
555 F. Supp. 3d 1363 (J.P.M.L. 2021)......................................................10, 12

*In re Taxotere (Docetaxel) Eye Inj. Prods. Liab. Litig.,*
584 F. Supp. 3d at 1379 (J.P.M.L. 2022)......................................................2, 13, 15

*In re Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig.,*
677 F. Supp. 3d 1368 (J.P.M.L. 2023)......................................................10

**Statutes**

28 U.S.C. § 1407......................................................9, 10, 13

**Other Authorities**

ADA, 2024, Clinical Practice Guidelines Sections 8-9,
https://doi.org/10.2337/dc24-S008 and https://doi.org/10.2337/dc24-S009......................................................2

CDC, Adult Obesity Facts, May 14, 2024, https://www.cdc.gov/obesity/adult-obesity-facts/?CDC_AAref_Val=https://www.cdc.gov/obesity/data/adult.html......................................................2

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

FDA, *FDA Approves First Medication for Obstructive Sleep Apnea*,
https://www.fda.gov/news-events/press-announcements/fda-approves-first-
medication-obstructive-sleep-apnea (last visited Aug. 18, 2025)................................3

FDA, *New Drug Therapy Approvals 2022*, https://tinyurl.com/mr2nnm3t (last
visited Aug. 18, 2025)..........................................................................................................3

Simonsen E., et al., *Use of Semaglutide and Risk of Non-Arteric Anterior
Ischemic Optic Neuropathy:  A Danish-Norwegian Cohort Study* ............................5

Stats. Rep., May 15, 2024, https://www.cdc.gov/diabetes/php/data-
research/index.html ..........................................................................................................2

Wang et. al, Semaglutide or Tirzepatide and Optic Nerve and Visual Pathway
Disorders in Type 2 Diabetes. JAMA Netw. Open, 2025..........................................5

## I.    INTRODUCTION

Lilly's prescription GLP-1 medicines (Trulicity, Mounjaro, and Zepbound)[1] are safe and effective treatment options for patients with certain chronic conditions, including type 2 diabetes, obesity, and obstructive sleep apnea. Notwithstanding their robust FDA-approved labels, two years ago, plaintiffs started filing lawsuits against Lilly and Novo Nordisk (the maker of other GLP-1s, including Ozempic and Wegovy), alleging they failed to warn about gastrointestinal injury risks. In February 2024, this Panel centralized the gastrointestinal cases against both manufacturers in MDL 3094 and transferred them to the Eastern District of Pennsylvania,[2] where they are pending before Judge Karen S. Marston. Judge Marston has developed expertise in the scientific and regulatory issues related to these medicines, as well as deep familiarity with the parties and their attorneys.

Plaintiffs, mostly represented by the same plaintiffs' lawyers who serve as Co-Lead Counsel in MDL 3094, have filed at least 21 cases in federal courts against the same defendants (Novo and/or Lilly) alleging that the same medicines (e.g., Ozempic, Wegovy, Trulicity, and/or Mounjaro) caused another injury: non-arteritic anterior ischemic optic neuropathy (NAION). These filings came after some articles reported potential associations, but drew no causal conclusions, between NAION and semaglutide (the active ingredient in Novo's Ozempic, Wegovy, and Rybelsus medicines).

Lilly respectfully moves to centralize the federal NAION cases before Judge Marston in the Eastern District of Pennsylvania or, alternatively, to add NAION cases to MDL 3094. Coordinating the NAION cases against Novo and/or Lilly now will facilitate the efficient resolution of central common issues, including whether there is reliable scientific evidence that Lilly's or Novo's medicines can cause NAION. Judge Marston is already overseeing an MDL involving the same

---

[1] Mounjaro and Zepbound are dual agonists; they activate both the GLP-1 receptor and the glucose-dependent insulinotropic polypeptide (GIP) hormone receptor.

[2] *In re Glucagon-Like Peptide-1 RA Prods. Liab. Litig.*, 717 F. Supp. 3d 1370, 1374 (J.P.M.L. 2024).

medicines, parties, and lawyers. These cases include several pending "combination" cases alleging both NAION and gastrointestinal injuries, which were filed directly into MDL 3094. Judge Marston, who has significant knowledge about the scientific and regulatory background of these medicines, is in a "unique position to guide" the NAION litigation.[3]

Centralization now is also important because there are dozens of NAION cases and hundreds of gastrointestinal cases in state courts that will require coordination with federal cases. Most of those are subject to requests to create a New Jersey multicounty litigation (MCL) in which both NAION and gastrointestinal claims would be assigned to the same judge. Assigning the federal NAION cases to Judge Marston will facilitate and streamline the coordination of gastrointestinal and NAION state and federal cases, "simply because there will now be only one federal judge handling most or all federal [GLP-1] litigation."[4]

## II.    BACKGROUND

### A.    Lilly's GLP-1 Medicines.

Diabetes, obesity, and obstructive sleep apnea are widespread and escalating health concerns in the United States. 38.4 million Americans—approximately one in every ten adults—are living with diabetes,[5] and more than 100 million adults are affected by obesity.[6] GLP-1s are a first-line treatment option for these chronic conditions.[7] These FDA-approved medicines are safe and effective, as supported by clinical research and the successful treatment of millions of patients.

---

[3] *In re Taxotere (Docetaxel) Eye Inj. Prods. Liab. Litig.*, 584 F. Supp. 3d 1378, 1379 (J.P.M.L. 2022).

[4] *In re Covidien Hernia Mesh Prods. Liab. Litig.*, 607 F. Supp. 3d 1356, 1357–58 (J.P.M.L. 2022).

[5] CDC, Nat'l Diab. Stats. Rep., May 15, 2024, https://www.cdc.gov/diabetes/php/data-research/index.html.

[6] CDC, Adult Obesity Facts, May 14, 2024, https://www.cdc.gov/obesity/adult-obesity-facts/?CDC_AAref_Val=https://www.cdc.gov/obesity/data/adult.html.

[7] ADA, 2024, Clinical Practice Guidelines Sections 8-9, https://doi.org/10.2337/dc24-S008 and https://doi.org/10.2337/dc24-S009.

Lilly's GLP-1 medicines include Trulicity and Mounjaro (both FDA-approved to treat type 2 diabetes) and Zepbound (FDA-approved to treat obesity and obstructive sleep apnea). Trulicity (active ingredient dulaglutide) was first approved in 2014, and in 2020 became the first medicine approved to reduce the risk of major adverse cardiovascular events in patients with type 2 diabetes. In 2022, the FDA approved Mounjaro (active ingredient tirzepatide) for the treatment of type 2 diabetes, describing it as "a first-in-class" medication.[8] Unlike Trulicity, Ozempic, and other GLP-1 medicines, Mounjaro and Zepbound are dual-agonists, meaning they activate both the GLP-1 receptor and the GIP hormone receptor. GIP is a separate hormone that affects insulin secretion, which is involved in blood sugar control. Zepbound (active ingredient tirzepatide) is approved for chronic weight management. In December 2024, Zepbound also became the first FDA-approved medicine to treat obstructive sleep apnea, a life-threatening condition.[9]

## B.     The Creation And Management Of MDL 3094.

In August 2023, plaintiffs began filing lawsuits alleging that GLP-1 medicines made by Novo and Lilly failed to warn of gastrointestinal injury risks. On February 2, 2024, the Panel centralized these cases in MDL 3094 and transferred them to the Eastern District of Pennsylvania, finding they shared substantially similar allegations concerning GLP-1s and their alleged propensity to cause gastrointestinal injuries. *In re GLP-1 RAs Prods. Liab. Litig.*, 717 F. Supp. 3d 1370, 1374 (J.P.M.L. 2024). On June 6, 2024, the Panel reassigned MDL 3094 to Judge Marston.[10] MDL 3094 includes plaintiffs who allegedly used Lilly's Trulicity, Mounjaro, and Zepbound medicines, and

---

[8] FDA, *New Drug Therapy Approvals 2022*, https://tinyurl.com/mr2nnm3t (last visited Aug. 18, 2025).

[9] FDA, *FDA Approves First Medication for Obstructive Sleep Apnea*, https://www.fda.gov/news-events/press-announcements/fda-approves-first-medication-obstructive-sleep-apnea (last visited Aug. 18, 2025).

[10] Sadly, the Hon. Gene E.K. Pratter (the first transferee judge) passed away in May 2024. JPML ECF No. 213.

Novo's Victoza, Saxenda, Ozempic, Wegovy, and Rybelsus medicines. Plaintiffs' Co-Lead Counsel are Morgan & Morgan, Motley Rice, Seeger Weiss, and Wagstaff & Cartmell. MDL ECF No. 121.

**Frontloading and resolving threshold cross-cutting issues**. Since presiding over MDL 3094, Judge Marston has engaged in substantial substantive issues, including: (i) holding a "Science Day" to better understand the complex medicines and the conditions they treat, MDL ECF No. 244, (ii) ordering extensive briefing and sequencing the early resolution of certain threshold issues concerning (a) the reliable diagnosis of gastroparesis (the most common gastrointestinal injury alleged in the MDL), (b) warning adequacy and federal preemption, and (c) general causation.[11] On August 15, 2025—after considering over 3700 pages of briefing; hundreds of pages of expert reports, and holding two full days of evidentiary hearings and arguments (during which Judge Marston questioned three experts during their live testimony)[12]—Judge Marston issued a 78-page opinion on the gastroparesis diagnosis issue. *See In re GLP-1 RAs Prods. Liab. Litig*, 2025 WL 2396801 (E.D. Pa. Aug. 15, 2025). That same day, Judge Marston entered a separate 79-page opinion granting in part and denying in part Defendants' partial motion to dismiss plaintiffs' 240-page, 850-paragraph Master Complaint. *See In re GLP-1 RAs Prods. Liab. Litig.*, 2025 WL 2394047 (E.D. Pa. Aug. 15, 2025).[13]

**Coordination with parallel state court cases.** Recognizing the likelihood of related state-court litigation, Judge Marston entered a Coordination Order. The Order set procedures to facilitate efficient and cooperative case management between the federal MDL and related state court actions.

---

[11] CMO 18-21, 23; MDL ECF Nos. 235, 269, 282, 291, 368.

[12] MDL ECF Nos. 360, 361, 377, 379, 385, 386, 399.

[13] Along the way, Judge Marston entered case management orders to accelerate the resolution of MDL 3094, including orders requiring Plaintiff Fact Sheets and allowing direct filing of claims into the MDL. *E.g.*, MDL ECF Nos. 159, 186-188, 212, 369. And emerging issues are promptly identified and addressed in weekly telephonic and monthly in-person status conferences.

MDL ECF No. 370. There are now more than 800 state court cases alleging gastrointestinal injuries. Most of those cases are in New Jersey and are subject to a pending request for centralized management in an MCL under New Jersey Rule 4:38 and Directive 2-19. Other gastrointestinal cases are pending against Lilly and/or Novo in Indiana and Delaware state courts. Judge Marston has indicated she will reach out to the state court judges to whom related cases are assigned. And MDL Co-Lead Counsel have reiterated their commitment to facilitate the coordination of state court cases in New Jersey and elsewhere, including by adopting Judge Marston's Coordination Order.[14]

### C.    The NAION Cases.

NAION is a vision-loss condition resulting from lack of blood flow to the optic nerve. While the exact cause of NAION is not currently known, diabetes and obesity-related conditions, including sleep apnea and systemic hypertension, are known risk factors for NAION.

In July 2024, a publication first raised concerns about potential risks of NAION associated with semaglutide (the active ingredient in Novo's Ozempic, Wegovy, and Rybelsus medicines), but cautioned it was not determining a causal relationship.[15] Since then, a number of studies have yielded inconsistent results, with some reporting an association with semaglutide and others finding no effect.[16] As one of the most recent publications reiterated, no "causal conclusions" between NAION and GLP-1 medicines can be drawn from these studies.[17]

---

[14] MDL ECF No. 421, 5/19/25, Hr'g Tr. at 204:13-23.

[15] Hathaway, J.T., et al., Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide, JAMA OPHTHALMOLOGY, 2024.

[16] Compare Simonsen E., et al., Use of Semaglutide and Risk of Non-Arteritic Ischemic Optic Neuropathy: A Danish-Norwegian Cohort Study, DIABETES, OBESITY, AND METABOLISM, 2025 with Abbass N.J., et al., The Effect of Semaglutide and GLP-1 RAs on Risk of Nonarteritic Anterior Ischemic Optic Neuropathy, AM. J. OF OPHTHALMOLOGY, 2025; 274:24-31.

[17] Wang et. al, Semaglutide or Tirzepatide and Optic Nerve and Visual Pathway Disorders in Type 2 Diabetes. JAMA NETW. OPEN, 2025.

Nevertheless, plaintiffs' law firms (including some of the MDL 3094 Co-Lead Counsel) began advertising for NAION plaintiffs. They soon filed NAION claims against Novo in state and federal courts beginning in September 2024. Plaintiffs began filing NAION-related cases against Lilly in July 2025, and their advertising now also includes Lilly.

**Federal court cases**. There are currently 21 NAION cases spread across three federal district courts: 17 cases in the District of Jersey, 3 cases in the Eastern District of Pennsylvania (MDL 3094), and 1 case in the Northern District of Texas. Plaintiffs have indicated they expect to file hundreds more federal NAION cases and have explicitly recognized the prospect of an MDL.

All 17 District of New Jersey cases are against Novo and were filed by MDL 3094 Co-Lead Counsel Seeger Weiss or Morgan & Morgan. Previously, there were as many as six NAION cases filed directly into MDL 3094, five of which were filed by Morgan & Morgan (some of which named Lilly as a defendant). Days before Lilly filed the instant motion, Morgan & Morgan dismissed without explanation (and without prejudice) three of the NAION claims against Lilly that were filed in MDL 3094[18]—while they (and other plaintiffs) continued filing NAION cases in other courts. Today, there are three combination cases alleging both gastrointestinal and NAION injuries that remain pending in MDL 3094 (two filed by Morgan & Morgan against only Lilly; and one filed by another law firm against only Novo).

The allegations in the NAION complaints substantially overlap with allegations made in the gastrointestinal injury cases in MDL 3094. For example, on August 15, 2025, Morgan & Morgan filed a NAION injury case against Novo in the District of New Jersey. *Douglas v. Novo Nordisk A/S*

---

[18] On August 14 and 15, 2025, Morgan & Morgan voluntarily dismissed without prejudice the following NAION cases against both Lilly and Novo that had recently been directly filed into MDL 3094: *Franklin v. Novo Nordisk et. al.*, No. 2:25-cv-04197 (E.D. Pa. July 27, 2025); *Hardegree v. Novo Nordisk et al.*, No. 2:25-cv-04198 (E.D. Pa. July 27, 2025); and *Whitney v. Novo Nordisk et. al,* No. 2:25-cv-04088 (E.D. Pa. July 26, 2025).

*et al.*, No. 1:25-cv-14673 (D.N.J. Aug. 15, 2025). Even though that plaintiff does not allege gastrointestinal injuries, the complaint refers to gastrointestinal issues more than a dozen times. *Id.* That complaint also makes allegations about regulatory, warnings, and marketing issues that are nearly identical to allegations made in a gastrointestinal injury case filed by the same law firm (and MDL Co-Lead Counsel) against Novo in MDL 3094 two weeks earlier. *Compare id. with Rivera v. Novo Nordisk A/S et al.*, No. 2:25-cv-04356 (E.D. Pa. July 31, 2025). Similarly, some gastrointestinal complaints filed in MDL 3094 include allegations about NAION issues.[19]

There are currently 21 NAION or other eye injury lawsuits pending in three federal districts, as set forth on the attached Schedule of Actions:

**1. Eastern District of Pennsylvania**

a. *Ralph v. Novo Nordisk Inc. et al.,* No. 2:25-cv-01376 (Mar. 14, 2025) (Marston, J.)

b. *Morris v. Eli Lilly & Co.,* No. 2:25-cv-04106 (July 26, 2025) (Marston, J.)

c. *Garcia v. Eli Lilly & Co.*, No. 2:25-cv-04537 (Aug. 11, 2025) (Marston, J.)

**2. District of New Jersey**

a. *Kane v. Novo Nordisk A/S et al.*, No. 3:24-cv-11384 (Dec. 20, 2024) (Quraishi, J.)

b. *Pennell v. Novo Nordisk A/S et al.*, No. 3:25-cv-02756 (Apr. 16, 2025) (Quraishi, J.)

c. *Osterman v. Novo Nordisk A/S et al.*, No. 3:25-cv-03500 (Apr. 29, 2025) (Quraishi, J.)

d. *Malvesti v. Nov Nordisk A/S et al.,* No. 3:25-cv-08018 (June 6, 2025) (Quraishi, J.)

e. *Shea v. Novo Nordisk A/S et al.*, No. 3:25-cv-08033 (June 6, 2025) (Quraishi, J.)

f. *Lamanna v. Novo Nordisk A/S et al.,* No. 3:25-cv-12656 (July 2, 2025) (Quraishi, J.)

g. *Symonds v. Novo Nordisk A/S et al.,* No. 3:25-cv-12651 (July 2, 2025) (Quraishi, J.)

h. *Martin v. Novo Nordisk A/S et al.,* No. 3:25-cv-12988 (July 8, 2025) (Quraishi, J.)

i. *Braddock v. Novo Nordisk A/S et al.,* No. 3:25-cv-14352 (Aug. 8, 2025) (Quraishi, J.)

---

[19] *See, e.g., Lilly v. Novo Nordisk et al.*, No. 2:24-cv-03838, ¶¶ 43, 166-68, 170; *Butler v. Novo Nordisk et al.,* No. 2:25-cv-03854, ¶¶ 43, 159-61, 163.

j.  *Brinson v. Novo Nordisk A/S et al.,* No. 3:25-cv-14358 (Aug. 8, 2025) (Quraishi, J.)

k.  *Hershman v. Novo Nordisk A/S et al.,* No. 3:25-cv-14361 (Aug. 8, 2025) (Quraishi, J.)

l.  *Curtis v. Novo Nordisk A/S et al.,* No. 3:25-cv-14359 (Aug. 8, 2025) (Quraishi, J.)

m.  *Humble v. Novo Nordisk A/S et al.,* No. 3:25-cv-14363 (Aug. 8, 2025) (Quraishi, J.)

n.  *Burger v. Novo Nordisk A/S et al.,* No. 3:25-cv-14604 (Aug. 13, 2025) (Quraishi, J.)

o.  *Douglas v. Novo Nordisk A/S et al.,* No. 3:25-cv-14673 (Aug. 15, 2025) (Quraishi, J.)

p.  *Henley v. Novo Nordisk A/S et al.,* No. 3:25-cv-14720 (Aug. 19, 2025) (Not Assigned)

q.  *Prorock v. Novo Nordisk A/S et al.,* No. 3:25-cv-14721 (Aug. 19, 2025) (Not Assigned)

### 3.  Northern District of Texas

*a. Golmon v. Novo Nordisk Inc. et al.*, No. 3:24-cv-02368 (Sep. 19, 2024) (Kinkeade, J.)

All the federal cases are in the early stages. Most have not moved past the initial complaint filing. In one case, *Kane*, in the District of New Jersey, Novo and plaintiffs completed briefing on Novo's motion to dismiss on May 19, 2025, and Magistrate Judge Rukhsanah Singh held an initial conference with the parties. The court has not yet ruled on Novo's motion to dismiss in *Kane*. There has not been substantive motion practice in any other New Jersey federal case. On June 2, 2025, the parties completed briefing on Novo's motion to dismiss in *Golmon*, in the Northern District of Texas, but the court has not yet ruled on that motion, and company discovery has not started.[20]

**State court cases.** Plaintiffs have also filed NAION cases in state courts, including 43 cases in New Jersey. Plaintiffs have requested centralization of the New Jersey gastrointestinal cases and the NAION cases in MCLs in the same county and before the same judge. Lilly will support (and expects Novo also supports) consolidating both injury types in the same MCL. There is one recently filed Indiana state court case against Lilly alleging both NAION and gastrointestinal injuries.

---

[20] Lilly is not a party to the District of New Jersey or the Northern District of Texas cases and has not participated in preliminary matters in those lawsuits.

Giving the growing web of gastrointestinal and NAION GLP-1 litigation and the fact that some plaintiffs allege both gastrointestinal injuries and NAION, it is now apparent that there is a need to coordinate the NAION cases with the cases this Panel already coordinated in MDL 3094.

## III.    LEGAL STANDARD

Transfer and consolidation are appropriate when actions in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). In relevant part, Section 1407 provides:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

28 U.S.C. § 1407(a). Under JPML Rule 6.2(a), "A party to an action may initiate proceedings to transfer under Section 1407 by filing a motion in accordance with these Rules."

## IV.    ARGUMENT

### A.    The Requirements Of 28 U.S.C. § 1407 Are Satisfied.

Section 1407 establishes the framework for consolidating otherwise separate cases. Centralization of pretrial proceedings in an MDL is warranted when: (A) actions pending in different federal courts share "one or more common questions of fact," and (B) centralization "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Both criteria are satisfied here.

#### 1.    There Are Common Questions Of Fact.

Section 1407 requires that cases considered for centralization present "one or more common questions of fact." "[T]ransfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer." *In re Ins. Brokerage Antitrust Litig.*, 360 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005). Here, all the federal actions share core questions.

"[T]he issues concerning general causation, the background science, and regulatory history will be substantially the same in all actions" as to each defendant. *In re Acetaminophen – ASD/ADHD Prods. Liab. Litig.*, 637 F. Supp. 3d 1372, 1374 (J.P.M.L. 2022).[21]

The complaints in the NAION actions are notably similar, with many containing nearly identical allegations. They all allege that GLP-1s cause NAION; physicians prescribed Lilly and/or Novo GLP-1 medicines to treat diabetes or obesity; these patients developed NAION; and the Defendants failed to warn about NAION risk. Therefore, the NAION actions plainly present "one or more common questions of fact" as required by 28 U.S.C. § 1407(a).[22] These actions also present common questions of fact with the cases already coordinated in MDL 3904. As noted above, several of the NAION complaints allege both NAION and gastrointestinal injuries.

2. **Centralization Will Serve Convenience And Efficiency.**

Centralization under Section 1407(a) would offer significant advantages in terms of convenience for the parties and efficiency for the court.

**Streamline discovery and minimize risks of inconsistent rulings.** Centralization will substantially reduce the burdens of both fact and expert discovery for all parties by streamlining what are expected to be largely overlapping document productions and eliminating the need for multiple depositions of the same witnesses. For example, procedures, documents, and witnesses related to Lilly's safety and pharmacovigilance or regulatory affairs will be at issue in all NAION

---

[21] *See also In re Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig.*, 677 F. Supp. 3d 1368, 1369 (J.P.M.L. 2023) (common factual questions include whether biologic drug "can cause severe or permanent hearing loss and tinnitus."); *In re Suboxone (Buprenorphine/Naloxone) Film Mktg., Sales Pracs., & Prods. Liab. Litig.*, 717 F. Supp. 3d 1376, 1377 (J.P.M.L. 2024) (similar); *In re Tasigna (Nilotinib) Prods. Liab. Litig.*, 555 F. Supp. 3d 1363, 1364 (J.P.M.L. 2021) (similar).

[22] As Lilly explained in initially opposing a multi-defendant GI-injury MDL, Lilly's medicines, warnings, and regulatory history are different than Novo's. Regardless of whether the Panel creates multi-defendant NAION MDL, Lilly believes any consolidation of federal NAION claims *against Lilly* should be before Judge Marston in the Eastern District of Pennsylvania.

cases and all gastrointestinal cases, and covering the same discovery with the same witnesses in different courts is plainly inefficient. Centralization also will minimize the risk of inconsistent rulings and promote judicial efficiency, including by providing a mechanism to incorporate additional actions that are likely in the near future. For example, questions about the development, regulatory approval and oversight of product labeling, and pharmacovigilance issues will overlap in NAION cases, which, in turn, also overlap in many respects with those same issues in gastrointestinal cases. Similarly, resolving core questions about whether there is reliable scientific evidence showing that Lilly's medicines are even capable of causing NAION will be a critical issue in all NAION cases—particularly given the literature's repeated disclaimers that the current studies are not sufficient to show a causal association between any GLP-1 medicine and NAION. Inconsistent rulings on causation issues among federal courts would be insufficient, sew confusion among litigants, and risk inappropriate forum shopping.

There are at least three pending federal cases that allege both gastrointestinal and NAION injuries.[23] In some combination cases, plaintiffs allege gastrointestinal injuries caused NAION or vice versa.[24] This overlap raises not only convenience and efficiency issues, but also is substantively

---

[23] *E.g.*, *Morris v. Eli Lilly & Co.*, No. 2:25-cv-04106 (E.D. Pa July 26, 2025) (ECF No. 1 at ¶ 21) (alleging "Plaintiff was caused to suffer from ileus, intestinal obstruction, NAION, and their sequelae, which resulted in, for example, debilitating nausea, debilitating vomiting, debilitating diarrhea, debilitating abdominal pain, and vision loss"); *Ralph v. Novo Nordisk Inc. et al.*, No. 2:25-cv-01376 (E.D. Pa. Mar. 14, 2025) (ECF No. 1 at ¶ 19) (alleging plaintiff was diagnosed with NAION and that "Ozempic caused Plaintiff to suffer stomach paralysis, gastric obstruction, pain, suffering, emotional distress, vision loss . . ."); *Garcia v. Eli Lilly & Co.*, No. 2:25-cv-04537 (E.D. Pa. Aug. 11, 2025) (ECF No. 1 at ¶ 21) (alleging "Plaintiff was caused to suffer from gastroparesis, and its sequelae, which resulted in debilitating vomiting, blindness, requiring emergency medical care, and requiring hospitalization" and making NAION allegations).

[24] *Compare Schrier v. Eli Lilly & Co.*, No. 49D04-2507-CT-036185 (Ind. Super. Ct. 2025) (ECF No. 1 at ¶ 22) (alleging plaintiff has "non-arteritic anterior ischemic optic neuropathy (NAION), and its sequelae, including blindness, blurry, and/or darkened vision leading to falls and injuries, and cyclical vomiting") *with Garcia*, No. 2:25-cv-04537 (ECF No. 1 at ¶ 21) (alleging plaintiff suffers "from gastroparesis, and its sequelae, which resulted in debilitating vomiting, blindness, requiring emergency medical care, and requiring hospitalization.").

intertwined with causation issues, including regarding whether there is reliable scientific evidence that Lilly's medicines (or other GLP-1s) increase the risk of gastroparesis or vision issues related to gastroparesis, as opposed to the elevated background risks that this patient population already has due to the underlying conditions that the medicines are treating, *e.g.* diabetes and obesity. Judge Marston will address threshold gastrointestinal causation issues in MDL 3094. MDL ECF No. 368.

Consolidation benefits cannot be achieved by informal coordination alone or by transferring individual cases pursuant to Section 1404. *See In re Generic Pharm. Pricing Antitrust Litig.*, 2017 WL 4582710, at *2 (J.P.M.L. Aug. 3, 2017); *In re Suboxon*e, 717 F. Supp. 3d at 1376.

**Facilitate coordination with state court cases.** The increase in state court NAION filings (as well as state-court gastrointestinal injury cases (and state-court cases alleging both NAION and gastrointestinal injuries) that will likely be centralized or consolidated before the same state court judges) supports centralization. "The significant growth in state court litigation supports creation of a single federal court proceeding, which would facilitate coordination." *In re Covidien Hernia Mesh Prods. Liab. Litig. (No. II)*, 607 F. Supp. 3d at 1357-58; *see also In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 923 F.Supp.2d 1376, 1378-79 (J.P.M.L 2013) (creating an MDL will "facilitate coordination among all courts with Plavix cases, simply because there will now be only one federal judge handling most or all federal Plavix litigation").[25]

**More federal and state court cases will be filed**. There are already 21 federal NAION lawsuits, and dozens more in state courts. And "the parties unanimously agree that there is a strong likelihood of additional federal actions and also report a significant number of state court actions."

---

[25] *See also In re Tasigna*, 555 F. Supp. 3d at 1364 n.4 ("Centralization also facilitates coordination of the federal and state court actions"); *In re Baby Food Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*, 730 F. Supp. 3d 1371, 1373 (J.P.M.L. 2024) ("Additionally, centralization in this district will facilitate coordination with the ongoing California state court baby food litigation").

*See In re Eliquis (Apixaban) Prods. Liab. Litig.*, 282 F. Supp. 3d 1354, 1356 (J.P.M.L. 2017).[26] Moreover, the number of pending federal cases here already exceeds those in recent actions the Panel consolidated under Section 1407.[27] By comparison, when the Panel created and included claims against Lilly in MDL 3094, there were only five cases against Lilly at that time. *See In re GLP-1 RAs Prods Liab. Litig.*, 717 F. Supp. 3d at 1375.

**The federal NAION cases are in the early stages**. The very early stages of related NAION cases also supports centralization. Motions to dismiss are currently pending in two of these cases, and none have been ruled upon. And only one case has proceeded to limited discovery of one plaintiff. Thus, there is "ample scope to eliminate duplication and enhance the convenience of the parties, the witnesses, and the courts through coordinated proceedings in the MDL," and there are "benefits to coordinating pretrial motions, as none of the actions has advanced beyond motions to dismiss." *In re Generic Pharm. Pricing Antitrust Litig.*, 2017 WL 4582710, at *2.

### B.    The NAION Actions Should Be Centralized Before The Honorable Karen S. Marston In The Eastern District Of Pennsylvania.

#### 1.    Judge Marston Is Uniquely Qualified To Manage The NAION Cases.

This Panel has recognized that when the claims or parties in two MDLs overlap, a transferee judge already presiding over one MDL may be uniquely positioned to guide the proceedings in a second, related MDL. *See, e.g., In re Taxotere*, 584 F. Supp. 3d at 1379; *In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1381 (J.P.M.L. 2015). That is precisely the situation here.

**Managing combination cases**. Several plaintiffs allege both gastrointestinal and NAION injuries in the same complaint (*see* § IV.A.2, above)—which supports consolidating the NAION cases before Judge Marston, who is already overseeing the gastrointestinal injury proceedings. The

---

[26] *See also In re Tasigna*, 555 F. Supp. 3d. at 1364 (finding filings in defendant's home state "adds some credence to the prediction that more cases likely will be forthcoming").

[27] *See In re Paraquat Prod. Liab. Litig.*, 544 F. Supp. 3d. 1373, 1374 (J.P.M.L. 2021) (14 actions).

Panel addressed a similar issue when it created the multi-defendant MDL 3094 (including claims against both Novo and Lilly). The Panel explained that because several "plaintiffs allege they took both a Novo Nordisk product and an Eli Lilly product," "[s]imply excluding actions that name Eli Lilly would result in duplicative discovery and pretrial proceedings with respect to Novo Nordisk." *In re GLP-1 RAs Prods Liab. Litig.*, 717 F. Supp. 3d at 1374. The Panel held that "[s]eparation and remand of the claims" against Lilly "likewise is not a preferable solution." *Id.* Because the "'combination' actions allege" that both Novo and Lilly "contributed to a single, indivisible, injury to plaintiff," separation and remand would require those plaintiffs "to prosecute two actions for their alleged injury in two separate courts." *Id.* The same is true here.

Absent assignment to Judge Marston, combination-case plaintiffs would straddle two different MDLs before two different judges (potentially in different jurisdictions). This would introduce the judicial inefficiencies MDLs are meant to prevent.[28] Further, as the Panel reiterated when creating the multi-defendant MDL 3094, "a transferee judge can employ any number of techniques" "to manage pretrial proceedings efficiently." *In re GLP-1 RAs Prods. Litig.*, 717 F. Supp. 3d at 1374. Judge Marston could consider creating different tracks for GI and NAION injuries (as Lilly understands is likely to occur in New Jersey MCL proceedings) if NAION cases are added to MDL 3094. Alternatively, if the Panel creates and assigns to Judge Marston a second MDL, she can coordinate with MDL 3094 (and state court proceedings) as she deems appropriate.

**Experience with the medicines and relevant scientific and legal issues.** Judge Marston is well-suited to preside over a second GLP-1 MDL. She has already amassed (and will continue to

---

[28] Seeger Weiss and Morgan & Morgan previously made a similar point to this Panel in the DVT context (see below). Including NAION actions in MDL 3094 (or assigning a new MDL to Judge Marston) would "align with both the Panel's and the Parties preference for an efficient MDL," while "including some related claims against [defendants] in this MDL while excluding others 'would be highly inefficient.'" JPML ECF No. 256-1 (quoting JPML ECF No. 153, 1/25/24 Tr. at 34:20-25).

develop) familiarity with the same medicines, including their scientific development, mechanism of action, regulatory approval, and the relationship between this background and plaintiffs' claims. Judge Marston has considered and ruled on gating pleading issues in connection with Defendants' motion to dismiss plaintiffs' Master Complaint. *In re GLP-1 RAs Prods. Liab. Litig.*, 2025 WL 2394047. That opinion will further shape MDL 3094 (including finalizing a short-form complaint). *See e.g.*, *id.* at *35-46. Many of the same legal parameters will apply to the NAION cases, which involve the same products (GLP-1s), the same defendants (Lilly and Novo), and many of the same legal theories (design defect, failure to warn, negligence, and fraud) that Judge Marston addressed in the MDL 3094 dismissal opinion.

Discovery related to Lilly's safety, pharmacovigilance, and regulatory policies also will substantially overlap across gastrointestinal and NAION cases. In MDL 3094, Judge Marston's familiarity with these issues will grow in connection with warning and causation motions. Further, and in conjunction with discovery Special Master Hon. Lawrence Stengel, Judge Marston has developed and applied discovery protocols that account for the parties' documentation practices and policies. There is no reason to reinvent the wheel on these kinds of issues with another judge now.

In sum, "although the injury alleged here [NAION] is different than" the gastrointestinal injury cases in MDL 3094, the "overlap between these litigations in pretrial proceeding" and "the same parties and counsel" as MDL 3094, place Judge Marston in "a unique position to guide this [NAION] litigation to an efficient resolution." *In re Taxotere*, 584 F. Supp. 3d at 1379 (assigning second chemotherapy MDL involving different injuries (eye injuries) to same transferee judge who presided over the first MDL involving hair loss injuries). *See also In re Fluoroquinolone*, 122 F. Supp. 3d at 1381 (transferring cases alleging drug caused irreversible neuropathy to the same judge overseeing an MDL concerning tendon-rupture injuries from the same drug); *In re Effexor (Venlafaxine Hydrochloride) Prods. Liab. Litig.*, 959 F. Supp. 2d 1359, 1360 (J.P.M.L. 2013)

(Judge Rufe "is in a unique position to guide this litigation, involving some of the same parties and counsel as MDL No. 2342, to an efficient resolution"); *In re Natrol, Inc. Glucosamine/Chondroitin Mktg. & Sales Pracs. Litig.*, 26 F. Supp. 3d 1392, 1394 (J.P.M.L. 2014) (assigning MDL to "transferee judge who presides over two MDLs that raise similar factual and legal claims concerning the effectiveness of dietary supplements").[29]

**Enhancing state-court coordination.** The multiplicity of state court cases makes assigning the gastrointestinal and NAION cases to the same federal transferee judge all the more important. "Coordination with the state court actions will be enhanced if only one federal judge needs to communicate with the multiple state court judges overseeing the [GLP-1] litigation." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1358 (J.P.M.L. 2016). Moreover, "[i]t is telling" "that many of the state court actions are themselves proceeding in coordinated or consolidated fashion in their respective state courts," and that all parties in the New Jersey state court cases support forming MCL proceedings have asked that the gastrointestinal and NAION injuries be assigned to the same MCL judge. *See id.*

**Familiarity with the parties and counsel in the federal and state court cases.** Beyond Judge Marston's substantive knowledge, she undoubtedly will continue to coordinate with the parties and counsel who are playing key roles in both NAION and GI cases in federal and state courts. Seeger Weiss and Morgan & Morgan (two Co-Lead Counsel in MDL 3094) represent plaintiffs in nearly all federal NAION cases (19 out of 21 cases). Plaintiffs' law firms with MDL 3094 leadership positions have filed most of the NAION state court cases, including 17 cases filed

---

[29] The Panel has also assigned MDLs to transferee judges presiding over cases with the same defendants. *E.g., In re Bard Implanted Port Catheter Prods. Liab. Litig.*, 698 F. Supp. 3d 1381, 1383 (J.P.M.L. 2023) (sending new MDL to the judge presiding over an MDL "involving a different medical device manufactured by Bard"). Here, both Defendants and their medicines overlap.

by Co-Lead Counsel Morgan & Morgan and Motley Rice. As shown below, there is remarkable overlap among lead counsel in MDL 3094 and those involved in federal and state NAION cases.

| Law Firm | MDL 3094 | NAION Cases | | |
| --- | --- | --- | --- | --- |
| | | Federal Cases | State Cases | Federal + State |
| Seeger Weiss | Co-Lead Counsel | 13 | 0 | 13 |
| Morgan & Morgan | Co-Lead Counsel | 6 | 8 | 14 |
| Motley Rice | Co-Lead Counsel | 0 | 9 | 9 |
| Anapol Weiss | Executive Committee | 0 | 3 | 3 |
| Parker Waichman | Steering Committee | 0 | 6 | 6 |
| Other Firms | n/a | 2 | 18 | 20 |
| Total | | 21 | 44 | 65 |

### 2. The NAION Issue Is Different Than The Prior DVT Request.

This motion is distinct from a prior request to add deep vein thrombosis (DVT) injuries to MDL 3094. *In re GLP-1 RAs Prods. Liab. Litig.*, 766 F. Supp. 3d 1328, 1329 (J.P.M.L. 2024). The DVT issue arose when all four MDL 3094 plaintiffs' Co-Lead Counsel filed a motion, supported by Novo, to transfer a single DVT case (*Craig*) to MDL 3094.[30] The Panel denied the motion, finding movants had not shown that "efficiency and convenience benefits" outweighed "the increased managerial complexity that the addition of such claims is likely to create." 766 F. Supp. 3d at 1329. The NAION issue is different in several respects.[31]

---

[30] Lilly is not a party to *Craig*, and it did not participate in the *Craig* briefing before the Panel.

[31] The Panel should reach its decision in the context of the growing nationwide NAION litigation. The Panel has applied a flexible approach to defining or clarifying the scope of other MDLs. For example, in *In re Phenylephrine Mktg. & Sales Pracs., Litig.*, MDL 3089, the Panel initially excluded "Maximum Strength Actions" from the MDL based on plaintiffs' representations that "they will not litigate the efficacy of oral phenylephrine in their actions." 709 F. Supp. 3d 1380, 1383 (J.P.M.L. 2023). But the Panel later revisited that decision and added those Actions to MDL 3089 when those representations were not borne out. MDL 3089, JPML ECF No. 414 at 2 (Apr. 11, 2024).

*First*, there are multiple NAION cases, some of which are combination cases where a plaintiff alleges both gastrointestinal and NAION injuries, and Judge Marston is already presiding over some of these cases. It does not appear that combination cases were an issue raised by the parties in the briefing in *Craig*, and thus the Panel did not have a chance to consider this issue in the DVT context. As discussed above, and consistent with the Panel's reasoning in creating the multi-defendant MDL 3094, "centralization of only claims" involving gastrointestinal injuries or "attempting to separate claims" involving NAION or other eye injuries, "would 'prove too procedurally complicated.'" *See In re GLP-1 RAs Prods Liab. Litig.*, 717 F. Supp. 3d at 1374 (quoting *In re AndroGel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014)). In contrast, assigning the NAION cases to Judge Marston will promote efficiency. She has already developed techniques to efficiently manage all claims in MDL 3094, including cases alleging NAION.[32]

*Second*, unlike in the DVT context, there now are many state gastrointestinal and NAION cases. Judge Marston will coordinate with the parties, lawyers, and judges presiding over those state court cases, including in the expected New Jersey MCL. In contrast, there were no state court DVT cases, and neither plaintiffs nor Novo suggested there would be.

*Third*, the cadence of MDL 3094 case filings should mitigate concerns that expanding the scope of the MDL would make it unwieldy. At the time the Panel considered the DVT request, MDL Co-Lead Counsel had predicted that there would be upward of 10,000 claims in MDL 3094. But they now concede that there are likely to be far fewer (only 2600 cases have been filed).

In sum, the Panel's concerns that adding DVT cases would increase the "managerial complexity" of MDL 3094, *In re GLP-1 RAs Prods Liab. Litig.*, 766 F. Supp. 3d at 1329, do not apply here. The efficiency and convenience benefits of assigning NAION claims to Judge Marston

---

[32] Further, after DVT ruling, Judge Marston suggested she was willing, if appropriate, to preside over DVT cases under E.D. Pa. Local Rule. MDL ECF No. 339, 12/17/24 Hr'g Tr. at 25-30.

(either through a new MDL or adding the injuries to the existing MDL 3094) are manifest. Rather than "significantly complicate the management" of the extant MDL 3094, *id.* at 1329; assigning the NAION claims to Judge Marston will facilitate the efficient management of MDL 3094.

> 3.    **The Eastern District Of Pennsylvania Is A Convenient Venue.**

**Philadelphia is still convenient.** The Eastern District of Pennsylvania continues to be an optimal venue for this litigation: it is where Judge Marston sits, is near Novo's U.S. headquarters, and is readily accessible for nationwide litigation. As the Panel recognized in transferring MDL 3094 to the Eastern District of Pennsylvania, "Novo Nordisk Inc.'s headquarters is [] nearby," and it "also provides a convenient and accessible location for this nationwide litigation." *In re GLP-1 RAs Prods Liab. Litig.*, 717 F. Supp. 3d at 1374. And the same NAION-case plaintiffs and defense lawyers already meet for monthly in-person conferences in MDL 3094 in Philadelphia (in addition to participating in Judge Marston's weekly telephonic conferences).

Centralizing NAION actions in the Eastern District of Pennsylvania before Judge Marston offers efficiencies that would be difficult (if not impossible) to achieve elsewhere. The prospect that hundreds of state-court cases (alleging both gastrointestinal and NAION) will likely be consolidated in one New Jersey MCL in New Jersey further supports transfer to nearby Philadelphia.

**Plaintiffs' decision to defer filing (or to dismiss already-filed) cases should not matter**. Plaintiffs filed a few NAION cases in the Eastern District of Pennsylvania. They then dismissed some (but not all) of them without prejudice, including some NAION cases that also alleged gastrointestinal injuries and plainly belonged in MDL 3094. But a lack of constituent cases is "no obstacle to assignment of the actions there. The Panel has recognized that, where the parties are located nationwide, the location of the currently filed cases is not a particularly important factor in our decision." *In re Acetaminophen*, 637 F. Supp. 3d at 1376 n.6 (quotations and citations omitted). This is particularly true where, as here, the transferee judge's experience overseeing another MDL

with similar allegations is "likely to benefit the parties . . . and to otherwise facilitate the just and efficient conduct of th[e] litigation." *See In re Pella Corp. Architect & Designer Series Windows Mktg., Sales Pracs. & Prod. Liab. Litig.*, 996 F. Supp. 2d 1380, 1382–83 (J.P.M.L. 2014) (transferring litigation to a district where no constituent actions were pending).

In short, centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and leverage Judge Marston's unique familiarity with the same products, defendants, counsel, and scientific legal issues already pending in MDL 3094. Centralization of the NAION cases in a separate MDL before Judge Marston—or including them in the existing MDL—is the most efficient course for all parties, witnesses, and the federal and state courts.

**V.    CONCLUSION**

For the foregoing reasons, Lilly respectfully requests the Panel transfer the actions identified in the attached Schedule of Actions, as well as any tag-along cases subsequently filed involving similar facts or claims, for coordinated pretrial proceedings before Judge Marston in the Eastern District of Pennsylvania. Alternatively, Lilly requests the Panel expand the scope of MDL 3094 to include NAION claims.

August 19, 2025                    */s/ Diana M. Watral*
                                   Diana M. Watral, P.C.
                                   **KIRKLAND & ELLIS LLP**
                                   333 West Wolf Point Plaza
                                   Chicago, IL  60654
                                   Telephone: (312) 862-2000
                                   Facsimile: (312) 862-2200
                                   diana.watral@kirkland.com

                                   *Attorney for Defendant Eli Lilly and Company*

20