**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

IN RE: GLUCAGON-LIKE PEPTIDE-1
RECEPTOR AGONISTS (GLP-1 RAs)
NON-ARTERITIC ANTERIOR                    MDL DOCKET NO. 3163
ISCHEMIC OPTIC NEUROPATHY
PRODUCTS LIABILITY LITIGATION

<u>**PLAINTIFFS' CHERYL HENLEY ET AL.'S RESPONSE IN OPPOSITION TO ELI
LILLY AND COMPANY'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO
28 U.S.C. § 1407**</u>

<u>***Oral Argument Requested***</u>

Dated: September 12, 2025                    **MORGAN & MORGAN, P.A.**

Jonathan M. Sedgh
MORGAN & MORGAN, P.A.
199 Water St., Suite 1500
New York, New York 10038
Phone: (202) 738-6839
Email: jsedgh@forthepeople.com

**Attorneys for Plaintiffs Cheryl Henley et al.**

**Table of Contents**

**Page**

I.      Introduction ...................................................................................................... 1

II.     The NAION Lawsuits ....................................................................................... 3

III.    Argument .......................................................................................................... 4

        A.      The Related Actions Should Be Consolidated In The District of New Jersey ........ 4

                1.      Location of the Parties, Witnesses, and Documents .................................... 4

                2.      The Accessibility of the Proposed District .................................. 5

                3.      The Respective Case Loads ................................................... 6

                4.      Where the Largest Number of Cases Are Pending ..................................... 6

                5.      Where Cases Have Progressed The Farthest ................................. 7

                6.      The NAION Lawsuits Should Continue Before Judge Quraishi ................ 9

        B.      The Related Actions Should Not Be Consolidated Into MDL No. 3094 ............... 9

                1.      The Differences Between the NAION GLP-1 RA Claims and Gastrointestinal Claims Are Significant .................................. 10

                2.      Consolidation Into MDL No. 3094 Would Unnecessarily Complicate The MDL And Unnecessarily Delay NAION Plaintiffs' Cases ..................................... 12

Conclusion .................................................................................................................... 14

<u>**Table of Authorities**</u>

<u>**Page(es)**</u>

<u>**Cases:**</u>

*In re*: *Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    765 F. Supp. 3d 1379 (J.P.M.L. 2024)................................................................13

*In re Corn Derivatives Antitrust Litig.*,
    486 F. Supp. 929 (J.P.M.L. 1980)....................................................................4

*In re*: *Covidien Hernia Mesh Prods. Liab. Litig. (No. II)*,
    607 F. Supp. 3d 1356 (J.P.M.L. 2022)...............................................................7

*In re*: *Fluoroquinolone Prods. Liab. Litig.*,
    122 F. Supp. 3d 1378 (J.P.M.L. 2015)..............................................................13

*In re*: *Fosamax (Alendronate Sodium) Prods. Liab. Litig.*,
    787 F. Supp. 2d 1355 (J.P.M.L. 2011)........................................................5, 6, 7, 9

*In re*: *GAF Elk Creek Timbers Decking Mktg. Sales Practices & Prods. Liab. Litig.*,
    65 F. Supp. 3d 1407 (J.P.M.L. 2014).............................................................4, 5

*In re*: *Giam, Inc., Water Bottle Mktg. Sales Practices & Prods. Liab. Litig.*,
    672 F. Supp. 2d 1373 (J.P.M.L. 2010)............................................................. 13

*In re*: *Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liab. Litig.*,
    766 F. Supp. 3d 1328 (J.P.M.L. 2024)..............................................................10

*In re*: *Glucagon-Like Peptide-Receptor Agonists (GLP-1 RAs) Prods. Liab. Litig.*,
    717 F. Supp. 3d 1370 (J.P.M.L. 2024)...........................................................2, 10

*In re*: *Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*,
    220 F. Supp. 3d 1356 (J.P.M.L. 2016).........................................................5, 6, 9

*In re*: *Taxotere (Docetaxol) Eye Inj. Prods. Liab. Litig.*,
    584 F. Supp. 3d 1378 (J.P.M.L. 2022)..............................................................13

<u>**Statutes**</u>

28 U.S.C. § 1407..............................................................................................1

<u>**Other Authorities**</u>

JT Hathaway, et al., *Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, JAMA Ophthalmol., 142(8): 732-739, *available at* https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2820255........................... 3, 11

David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 20.131, at 239 (rev. ed. 2022) ...................................................................................................................................4

**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

IN RE: GLUCAGON-LIKE PEPTIDE-1
RECEPTOR AGONISTS (GLP-1 RAs)
NON-ARTERITIC ANTERIOR                    **MDL DOCKET NO. 3163**
ISCHEMIC OPTIC NEUROPATHY
PRODUCTS LIABILITY LITIGATION

**PLAINTIFFS' CHERYL HENLEY ET AL.'S RESPONSE IN OPPOSITION TO ELI
LILLY AND COMPANY'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO
28 U.S.C. § 1407**

***Oral Argument Requested***

## I.    INTRODUCTION

Pursuant to 28 U.S.C. § 1407 and JPML Rule 6.2(e), Plaintiffs Cheryl Henley et al.
("Plaintiffs") submit this Response In Opposition to Eli Lilly and Company's Motion for Transfer
of Actions Pursuant to 28 U.S.C. § 1407 (Dkt. 1), as follows:

Non-Arteritic Ischemic Optic Neuropathy ("NAION") is a condition that causes vision
loss. No treatment or cure exists. Worse yet, in some persons, permanent blindness occurs. Recent
medical literature shows that use of GLP-1 receptor agonists ("GLP-1 RAs"), such as those
manufactured by Novo Nordisk A/S and Novo Nordisk Inc. ( "Novo") and Eli Lilly and Company
("Lilly"), have an unwarned risk of NAION. Dozens of individuals who have used Novo's and
Lilly's products have concurrently suffered from NAION and have sued these companies either in
federal court, where almost all cases are pending before Judge Zahid N. Quraishi, or in state court.[1]

Lilly has asked the Panel to transfer the NAION cases in the District of New Jersey and
the Northern District of Texas to MDL No. 3094 in the Eastern District of Pennsylvania, which

---

[1] As of August 19, 2025, there are 43 NAION cases on file in New Jersey state court. Eli Lilly and
Company Br. In Support (Dkt. 1-1) at  p. 8.

1

was created for claims of gastrointestinal injuries.[2] Without question, the increasing number of NAION cases will benefit from consolidation and creation of an MDL. But the greatest efficiency would be achieved by creating a NAION MDL in the District of New Jersey, not by creating an MDL in the Eastern District of Pennsylvania, or by expanding the scope of MDL No. 3094, as Lilly has requested.

Consolidation and transfer to MDL No. 3094 would put persons suffering the life-changing loss of vision behind those with gastrointestinal injuries for which that MDL was specifically created, and for which that Court has focused its schedule. Inclusion in that MDL also would unnecessarily complicate matters, potentially causing delay and prejudice to all plaintiffs. A new, NAION-only MDL in the Eastern District of Pennsylvania could not duplicate the efficiencies of coordination with the numerous New Jersey state court cases as an MDL in the District of New Jersey, where cases are already progressing and coordination with the plaintiffs in the New Jersey state cases is already occurring. Further, Novo's headquarters in the United States is in Plainsboro, New Jersey. Logistical and geographical concerns thus militate in favor of the District of New Jersey.

Plaintiffs request that the Panel consolidate all currently filed federal court cases identified in Lilly's Schedule of actions (Dkt. 1-2) (the "Related Actions") pending against Defendants Novo and Lilly, as well as any subsequently filed cases involving common factual issues, in the District of New Jersey before Judge Zahid N. Quraishi. Consolidation in the District of New Jersey, where

---

[2] The Panel described the cases that form the core of MDL No. 3094 as: "All actions share common issues of fact regarding whether defendants knew or should have known that their GLP-1 RA products can cause gastroparesis and other gastrointestinal injuries, whether defendants adequately warned plaintiffs or their prescribing physicians about the alleged dangers of these products, and whether defendants made false, misleading, or incomplete representations regarding the safety of these products." *In re: Glucagon-Like Peptide-Receptor Agonists (GLP-1 RAS) Prods. Liab. Litig.*, 717 F. Supp. 3d 1370, 1373 (J.P.M.L. 2024).

2

the greatest number of NAION cases are filed, and where the vast majority of cases are progressing, will speed the progress of NAION litigation and will avoid adding potentially hundreds of cases involving vastly different injuries and a far different mechanism of action.

## II.    THE NAION LAWSUITS

The Related Actions share a common set of factual allegations that Novo (or Lilly) did not sufficiently warn the Plaintiffs of the risk of suffering NAION-induced vision loss – and even blindness – simply from the prescribed use of GLP-1 RAs. Neither Novo nor Lilly warned doctors or patients of the risk of NAION injury from the use of their products. The complaints, while naming the same defendants and involving the same GLP- RAs drugs as those for the cases pending in MDL No. 3094, have distinctly different factual allegations, and allege causes of actions and claims of injuries that will require much different sets of proof. They bring warranty, fraud, misrepresentation, and negligent undertaking claims based on Novo and Lilly's representations and omissions relating to NAION.

In contrast, the complaints in the cases in MDL No. 3094 allege claims related to Defendants' awareness of the risks of distinctly gastrointestinal type of injuries (including gastroparesis, ileus, bowel obstruction, gallbladder, and others) and their failure to sufficiently warn those plaintiffs of the risks of those injuries, and thus focus on the issue of warnings as to those injuries. Although the same drugs are involved, causation issues will vary quite significantly because the injuries suffered by the two sets of plaintiffs involve different injuries, organ systems, and different mechanisms of action.[3] These differences significantly outweigh the similarities.

---

[3] *See* JT Hathaway, et al., *Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, JAMA Ophthalmol., 142(8): 737-38, *available at* https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2820255 ("[E]xpression of the GLP_1 receptor in the human optic nerve and GLP-1 RA-induced enhanced sympathetic nervous

III.    **ARGUMENT**

A.    **The Related Actions Should be Consolidated in the District of New Jersey.**

Because the Related Actions share many common issues, Plaintiffs agree that the cases would benefit from consolidation. But that is where Plaintiffs and Lilly part company. Plaintiffs believe that the most appropriate forum for the litigation is the District of New Jersey before Judge Zahid N. Quraishi, where the largest group of cases are pending and progressing efficiently. The choice of this forum is supported by application of the factors established in *In re Corn Derivatives Antitrust Litig.*, 486 F. Supp. 929, 931-32 (J.P.M.L. 1980), which are:

(1) the location of the parties, witnesses, and documents;

(2) the accessibility of the proposed transferee district to parties and witnesses; and

(3) the respective caseloads of the proposed transferee district courts.

Other factors include "where the largest number of cases is pending, where discovery has occurred, where cases have progressed furthest, the site of the occurrence of the common facts, where the cost and inconvenience will be minimized, and the experience, skill, and caseloads of available judges." David F. Herr, *Annotated Manual for Complex Litigation, Fourth* § 20.131, at 239 (rev. ed. 2022).

1.    **Location of the Parties, Witnesses, and Documents.**

This factor weighs heavily in favor of the District of New Jersey. Novo's United States headquarters is located in the District of New Jersey. Thus, this is the location of many document custodians with access to the information needed by Plaintiffs to prove the claims alleged in their complaints.  This first factor is often a key one. *See In re*: *GAF Elk Creek Timbers Decking Mktg.*,

---

system activity might influence optic nerve head perfusion and potentially increase the risk of NAION.").

*Sales Practices & Prods. Liab. Litig.*, 65 F. Supp. 3d 1407, 1408 (J.P.M.L. 2014) ("We find the District of New Jersey to be the appropriate transferee forum for this litigation. Defendant is headquartered in this district, and therefore relevant documents and witnesses will be found there."); *In re: Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 787 F. Supp. 2d 1355, 1357 (J.P.M.L. 2011) ("The headquarters, witnesses and documents of the common defendant, Merck, are located within the District of New Jersey, and nearly two-thirds of the pending actions are already in this district before a single judge."). Given the proximity of Novo's headquarters and witnesses to Trenton, this factor amply supports transfer to the District of New Jersey.

### 2.    The Accessibility of the Proposed District.

It is uncontroversial to assert that the District of New Jersey is easily accessible for both parties and witnesses. Trenton is a short driving distance from New York City. Three major airports—Newark Liberty International Airport, John F. Kennedy International Airport, and LaGuardia Airport—are all within 85 miles of Trenton. Further, Trenton is accessible via rail through Amtrack, New Jersey Transit, and SEPTA railroads. The railroad options include daily trains from New York, Philadelphia, and Washington D.C. And for those Plaintiffs with cases already filed in the District of New Jersey, this District it is more accessible than the Eastern District of Pennsylvania. For plaintiffs located outside the District of New Jersey, though, it is equally as accessible as the Eastern District of Pennsylvania. In sum, the District of New Jersey is an easily accessible forum for nationwide litigation and an appropriate choice given the location of Novo's headquarters and the large number of New Jersey state court cases. *See In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1359 (J.P.M.L. 2016) ("We select the District of New Jersey as the appropriate transferee district for this litigation. The district is a convenient and accessible forum for this nationwide

5

litigation, and is located in close proximity to a large number of state court actions pending in New Jersey and other jurisdictions on the East Coast of the United States.")

### 3.    The Respective Case Loads.

Both the District of New Jersey and the Eastern District of Pennsylvania have active dockets and comparable caseloads. Substantial activity, however, has already occurred in MDL No. 3094, in which over 2,700 cases have been filed by plaintiffs who have alleged various gastrointestinal injuries caused by Defendants' products. The District of New Jersey, though, has not had to deal with the same mass of cases. Allowing NAION cases to proceed in the District of New Jersey will thus serve the cause of judicial economy and allow NAION cases to proceed expeditiously. *See In re*: *Fosamax*, 787 F. Supp. 2d at 1357.

### 4.    Where the Largest Number of Cases are Pending.

The vast majority of NAION cases are pending in the District of New Jersey. Seventeen of the twenty-one cases are pending in this district, with fifteen assigned to Judge Quraishi, and two not yet assigned. *See* Schedule of Actions (Dkt. 1-2) at pp. 1-5; *see also* Eli Lilly and Company Br. In Support (Dkt. 1-1) at  pp. 7-8. Only two NAION cases are pending in the Eastern District of Pennsylvania, and one was filed in the Northern District of Texas.[4] This factor heavily favors the District of New Jersey as the choice of forum for a NAION MDL. *See In re*: *Fosamax,* 787 F. Supp. 2d at 1357 ("We are persuaded that the District of New Jersey is an appropriate transferee

---

[4] According to Lilly, there are three combination cases alleging both gastrointestinal and NAION injuries that remain pending in MDL 3094. Eli Lilly and Company Br. In Support (Dkt. 1-1) at p. 6. Not so. Indeed, Lilly has not given the Panel the full context surrounding these cases. In one of the cases Lilly identifies, *Garcia*, the plaintiff filed an amended complaint to correct a typographical error and confirm that he suffered gastrointestinal injuries, not blindness. *Garcia v. Eli Lilly and Company*, 2:25-cv-04537, Amended Complaint at p. 5, ¶ 15 (Dkt. 3-1). Lilly observes that Morgan & Morgan directly filed NAION cases in MDL No. 3094. Eli Lilly and Company Br. In Support (Dkt. 1-1) at p. 6. Lilly, however, notes in passing that Morgan & Morgan dismissed those cases before the filing of this motion. *Id*. at p. 6 n.18.

forum for this litigation given the number of cases pending there and the length of time some of those actions have been pending.")

### 5.    Where Cases Have Progressed the Farthest.

As Lilly acknowledges, dozens of cases are on file in New Jersey state court. Eli Lilly and Company Br. In Support (Dkt. 1-1) at p. 2. Indeed, a framework for consolidated litigation in New Jersey state court NAION cases is being constructed. Requests to create a New Jersey multicounty litigation ("MCL") are pending. As to cases pending in New Jersey state court, Lilly and Novo filed MCL statements supporting consolidation in New Jersey. Allowing consolidation of federal cases in the District of New Jersey will only lead to fulsome cooperation between state and federal courts, especially as state court cases continue to increase. *In re*: *Fosamax,* 787 F. Supp. 2d at 1355 ("[T]he federal courthouse in Trenton, New Jersey, is relatively close to the state court in Atlantic City, New Jersey, where hundreds of related cases are pending. Centralization in this district could facilitate coordination between the federal and state courts."); *In re*: *Covidien Hernia Mesh Prods. Liab. Litig. (No. II),* 607 F. Supp. 3d 1356, 1358 (J.P.M.L. 2022) ("Most cases are pending in [the District of Massachusetts], where Covidien LP is headquartered. Centralization there will facilitate coordination with the coordinated state court proceeding in Massachusetts state court."). In turn, a framework with pending federal cases is well underway.

NAION cases have made substantial progress under the guidance of Judge Quraishi in the District of New Jersey. The *Kane* case against Novo, which has been litigated for nearly a year, is quite advanced. Defendants have filed a motion to dismiss and for a more definite statement, which the parties have fully briefed. The parties in *Kane* have also conducted extensive Rule 26(f) discussions, submitted a Rule 26(f) report, and exchanged initial disclosures. They negotiated and entered the Rule 502(d) and Preservation Orders; they continue to negotiate other orders in

7

coordination with plaintiffs in the Related Actions pending in federal and state courts in New Jersey.

Progress has also been made beyond *Kane*. The parties in some Related Actions pending in the District of New Jersey have negotiated a set of MedDRA terms for identification of responsive adverse events in Novo's safety tracking systems. And at the initial case management conference in *Kane*, the parties discussed the need for coordinating motion-to-dismiss practice across the Related Actions and holding a Science Day on issues relating to GLP-1 RAs and NAION. In other Related Actions in the district, the parties in *Pennell*, *Osterman*, *Shea*, and *Malvesti* have exchanged pre-motion letters relating to proposed motions to dismiss.[5]

As noted above, NAION plaintiffs in the District of New Jersey have been successfully coordinating with New Jersey state court plaintiffs. They have reached agreement among themselves and defendants on the Preservation Order and Rule 502(d) Order entered in *Kane*. New Jersey state and federal court plaintiffs have also coordinated to present unified positions to Defendants on orders governing:

(1) production of electronically stored information;

(2) asserting and challenging privilege claims;

(3) asserting and challenging confidentiality claims; and

(4) procedures for sealing confidential documents submitted to the Court.

Overall, the NAION litigation in the District of New Jersey has substantially progressed in the last year and the choice of this district for a NAION MDL would only further such efforts,

---

[5] *Shea v. Novo Nordisk*, Case No. 3:25-cv-08033-ZNQ-RLS, Dkt. Nos. 9 & 10; *Pennell v. Novo Nordisk*, Case No. 2:25-cv-02756-ZNQ-RLS, Dkt. Nos. 9 &10; *Osterman v. Novo Nordisk*, Case No. 3:25-cv-03500, Dkt. Nos. 9 & 10; *Malvesti v. Novo Nordisk,* Case No. 3:25-cv-08018-ZNQ-RLS, Dkt. Nos. 10 & 11.

including coordination with state court plaintiffs. *See In re*: *Johnson & Johnson,* 220 F. Supp. 3d at 1359 ("Further, as Judge Wolfson is presiding over the most procedurally-advanced action (Chakalos), she is well situated to structure this litigation so as to minimize delay and avoid unnecessary duplication of discovery and motion practice.").

### 6.    The NAION Litigation Should Continue Before Judge Quraishi.

Should the Panel choose to centralize the Related Actions and create an MDL in the District of New Jersey, then Judge Zahid Quraishi should be appointed to oversee the litigation.  Judge Quraishi is exceedingly well qualified to lead this important litigation. He has MDL experience. *See In re AVYCAZ (Ceftazidime and Avibactam) Patent Litigation*, MDL No. 3134.[6] He has experience in litigation involving drug and device companies.[7] And the vast majority of Related Actions are already assigned to him, including *Kane*, which is the most advanced case. Judge Quraishi has patently demonstrated the ability to manage this complex litigation and presides over the most advanced cases. *See In re*: *Johnson & Johnson,* 220 F. Supp. 3d at 1359; *see also In re*: *Fosamax,* 787 F. Supp. 2d at 1355 ("an experienced transferee judge who is already presiding over 27 actions").

### B.    THE RELATED ACTIONS SHOULD NOT BE CONSOLIDATED INTO MDL NO. 3094.

Lilly has requested that the Related Cases be consolidated and transferred to the Eastern District of Pennsylvania to be included in MDL No. 3094, which was established for the

---

[6] This is the only MDL that Judge Quraishi is overseeing, and it is small in comparison to MDL No. 3094. https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-September-2-2025.pdf (last visited Sept. 12, 2025). Indeed, MDL No. 3134 has two cases; MDL No. 3094 has over 2,700 cases. *Id.*
[7] *See Hall v. Johnson & Johnson*, Civil Action No. 18-1833; *Lewakowski v. Aquestive Therapeutics, Inc.*, *et al.*, Civil Action No. 21-3751; *Kelk v. Bausch Health Cos. Inc. et al.*, Civil Action No. 23-3996.

consolidation of cases filed by persons suffering a variety of gastrointestinal injuries allegedly caused by their use of prescribed GLP-1 RAs drugs.  Lilly downplays the crucial differences between MDL 3094's gastrointestinal injury claims and the NAION vision loss claims of the Related Actions and suggests that inclusion of NAION cases into the existing MDL would actually enhance efficiency. Eli Lilly and Company Br. In Support (Dkt. 1-1) at pp. 13-19.  Not so.

The Panel has already recognized that opening MDL No. 3094 to claims involving body systems other than the gastrointestinal system, such as deep vein thrombosis, would be imprudent. *In re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Prods. Liab. Litig.,* 766 F. Supp. 3d 1328, 1328-29 (J.P.M.L. 2024). The Panel held that "[f]urther expansion of MDL No. 3094 to include claims for new types of injuries would significantly complicate the management" of the litigation. *Id.* at 1329. Although Lilly points out the MDL No. 3094 already included claims by plaintiffs alleging both gastrointestinal and vision loss injuries, what it refers to as "combination cases," Eli Lilly and Company Br. In Support (Dkt. 1-1) at pp. 13-14, there are only two such cases at present. But adding potentially hundreds or thousands of NAION-only cases into an already complex MDL that has substantially progressed would delay and prejudice the NAION Plaintiffs and unnecessarily complicate the existing MDL.

### 1. The Differences Between NAION GLP-1 RA Claims and Gastrointestinal GLP-1 RA Claims Are Significant.

Lilly seems to argue that the differences between NAION claims related to use of GLP-1 RAs drugs and the gastrointestinal claims on which MDL No. 3094 is focused are merely a distinction without a difference. *Id.* at pp. 11-12, 15.  But the facts and the science show otherwise.

The MDL No. 3094 plaintiffs allege that GLP-1 RA drugs caused them to suffer "gastroparesis, ileus, intestinal obstruction or pseudo-obstruction, or other gastrointestinal injury." *In re: Glucagon-Like Peptide-1 Receptor Agonists,* 717 F. Supp. 3d at 1373. The scientific studies

concerning the effect of GLP-1 RAs on the human gastrointestinal system are substantially different than those studying the effect of these drugs on human vision. Rather than delayed gastric emptying that is alleged to result in the MDL plaintiffs' gastrointestinal injuries, the JAMA study suggests that vision loss is caused by "expression of the GLP-1 receptor in the human optic nerve and GLP-1 RA induced enhanced sympathetic nervous system activity might influence optic nerve head perfusion and potentially increase the risk of NAION."[8]

Lilly argues that including the Related Cases into MDL No. 3094 or in a separate MDL in the Eastern District of Pennsylvania would create certain efficiencies, including use of already developed discovery protocols. Eli Lilly and Company Br. In Support (Dkt. 1-1) at pp. 14-16. Given this difference in the effects of the GLP-1 RA drugs, however, the discovery needed by the MDL plaintiffs seeking recovery for gastrointestinal injuries is different from that needed by plaintiffs in NAION cases. Even though Lilly suggests that discovery would substantially overlap between gastrointestinal and NAION injury cases, *id.* at pp. 15-16, that is unlikely because much of the discovery in MDL No. 3094 would not apply to NAION cases, and vice versa.

As demonstrated in *Kane*, a much different set of MedDRA terms is needed for the identification of NAION adverse events than that which was used in MDL No. 3094 to identify adverse event reports of gastrointestinal injuries. And NAION discovery, such as the documents produced by Novo in *Kane* regarding the FDA's safety inquiry into the relationship between GLP-1 RAs and NAION, would not be needed for the MDL plaintiffs' claims alleging gastrointestinal injury. Discovery in the MDL proceeding guided by search terms seeking information from defendants on gastrointestinal injuries would not assist the NAION injury plaintiffs, who need

---

[8] JT Hathaway, et al., *Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, JAMA Ophthalmol., 142(8): 732-739, *available at* https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2820255.

their own NAION specific discovery. And the issue of Defendants' knowledge of gastrointestinal risks from the drugs and the sufficiency of any warnings is distinct from Defendants' knowledge of the risk of NAION vision loss and the lack of warnings. Thus, a separate NAION MDL in the District of New Jersey would lead to efficient discovery. Under Judge Quraishi, specific NAION vision loss discovery is already underway. It would thus be more efficient to have a NAION MDL Court in New Jersey coordinate discovery protocols with the Court overseeing the New Jersey MCL, with similar attorneys negotiating in New Jersey, rather than having orders from MDL No. 3094 apply to cases with NAION injuries.

### 2. Consolidation Into MDL No. 3094 Would Unnecessarily Complicate the MDL and Unnecessarily Delay NAION Plaintiffs' Cases.

Although Lilly argues that two MDLs for different injuries from the same drugs in different district courts would be inefficient, the Panel has often found that adding cases involving claims with different injuries to an existing MDL may make it too unwieldy and hinder the Court's ability to manage the litigation. As noted above, the Panel already denied expanding MDL No. 3094 to include claims alleging DVT injuries. Indeed, the Panel stated that an "MDL that encompassed *any* potential injury relating to use of these exceedingly popular weight loss drugs might quickly become procedurally and substantively unwieldy." *In re*: *Glucagon-Like Peptide-1 Receptor Agonists,* 766 F. Supp. 3d at 1329.

Other examples are instructive. In *In re*: *Roundup Prods*. *Liab*. *Litig*., the Panel vacated the transfer of a Plaintiff claiming "smoldering myeloma" into an MDL focused on cancer injuries, because that transfer "would constitute an expansion of the litigation to non-cancerous conditions."[9] Similarly, the Panel once denied a request to transfer lawsuits involving claims for

---

[9] October 5, 2020 Order, MDL No. 2741 (Dkt. 2027) at p. 1.

fraud in relation to the presence of BPA in metal water bottles into MDL No. 1967, which involved

the same allegations regarding the presence of BPA in the bottles, but centered on claims alleging

failure to warn, because the facts and liability theories were distinctly different. *In re*: *Giam*, *Inc*.,

*Water Bottle Mktg*., *Sales Practices & Prods*. *Liab*. *Litig*., 672 F. Supp. 2d 1373, 1374-75 (J.P.M.L.

2010). So too here. *See id*.

Although Lilly notes that MDL No. 3094 includes some cases in which the plaintiffs seek

recovery for both gastrointestinal and NAION vision injuries, the existence of these isolated cases

is not a sufficient reason to expand the scope of the MDL to include NAION-only cases. Last year,

the Panel noted that although MDL No. 2873 involved claims of exposure to PFAS, it had never

transferred to the MDL cases involving claims by firefighters based on direct exposure to PFAS

from PFAS-containing "turnout gear." *In re*: *Aqueous Film-Forming Foams Prods. Liab. Litig*.,

765 F. Supp. 3d 1379, 1380 (J.P.M.L. 2024). This was so even though the MDL included some

claims by firefighters alleging PFAS exposure from both AFFF's and PFAS-containing turnout

gear. *Id*. The Panel concluded that "[t]he mere fact that some actions in this MDL assert non-

AFFF claims in addition to those at the core of the MDL does not, standing alone, justify expanding

the scope of the litigation to encompass all such non-AFFF claims." *Id*. at 1381; *see also In re*:

*Giam*, *Inc*., 672 F. Supp. 2d at 1374-75.

Although Lilly cites the Panel orders in *In re*: *Taxotere (Docetaxol) Eye Inj*. *Prods*. *Liab*.

*Litig.,* 584 F. Supp. 3d 1378 (J.P.M.L. 2022), and *In re*: *Fluoroquinolone Prods*. *Liab*. *Litig*., 122

F. Supp. 3d 1378 (J.P.M.L. 2015), as examples of a district court judge being appointed to preside

over a second pharmaceutical injury MDL based on familiarity with the drug at issue, in those

instances the initiation of the two MDL's was six or more years apart, and the judge was not being

asked to preside over two complex litigation matters at the same time.

## <u>CONCLUSION</u>

For these reasons, Plaintiffs Cheryl Henley et al. respectfully request that the Panel order consolidated pretrial proceedings for the Related Actions and transfer all pending and future related actions to the District of New Jersey. Plaintiffs Cheryl Henley et al. respectfully request that the Panel decline to expand the scope of MDL 3094 to include NAION claims.

Dated: September 12, 2025                                  Respectfully submitted,

By: */s/ Jonathan Sedgh*
Jonathan Sedgh
MORGAN & MORGAN P.A.
199 Water St., Suite 1500
New York, New York 10038
Phone: (212) 738-6839
jsedgh@forthepeople.com

**Attorneys for Plaintiffs Cheryl Henley et al.**