## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: GLUCAGON-LIKE PEPTIDE-1 RECEPTOR AGONISTS (GLP-1 RAS) NON-ARTERITIC ANTERIOR ISCHEMIC OPTIC NEUROPATHY PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 3163 |

## NOVO NORDISK'S RESPONSE TO ELI LILLY AND COMPANY'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| BACKGROUND | | 2 |
| A. | GLP-1RA Medicines. | 2 |
| B. | Novo Nordisk's GLP-1RAs. | 3 |
| C. | The Creation of the GI MDL. | 4 |
| D. | Judge Marston's Management of the GI MDL. | 5 |
| E. | NAION. | 6 |
| | i. *Emerging Potential Signal For NAION* | 7 |
| F. | NAION Litigations | 8 |
| | i. *NAION Federal Cases.* | 8 |
| | ii. *NAION State Cases* | 9 |
| ARGUMENT | | 10 |
| I. These Cases Should Be Centralized in the Eastern District of Pennsylvania Before Judge Marston. | | 10 |
| A. | Centralization Is Appropriate. | 10 |
| B. | The Efficiencies Driving Centralization Will Be Best Accomplished In The Eastern District of Pennsylvania Before Judge Marston. | 11 |
| | i. *Judge Marston Is Uniquely Positioned to Oversee a NAION MDL* | 12 |
| | ii. *Judge Marston Is In an Ideal Position to Facilitate Cross-forum Coordination.* | 14 |
| C. | The Eastern District of Pennsylvania Remains Convenient. | 16 |
| CONCLUSION | | 16 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Covidien Hernia Mesh Prods. Liab. Litig.*,
   607 F. Supp. 3d 1356 (J.P.M.L. 2022) ................................................................. 11, 14

*In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1RAs) Prods. Liab. Litig.*,
   2025 WL 2396801 (E.D. Pa. Aug. 15, 2025) ............................................................. 12

*In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1RAs) Prods. Liab. Litig.*,
   717 F. Supp. 3d 1370 (J.P.M.L. 2024) ................................................................ *passim*

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*,
   220 F. Supp. 3d 1356 (J.P.M.L. 2016) ........................................................................ 14

**Statutes**

28 U.S.C. § 1407 ................................................................................................................... 16

**INTRODUCTION**

Novo Nordisk supports Eli Lilly and Company's petition for a multidistrict litigation proceeding focusing on cases alleging non-arteritic anterior ischemic optic neuropathy ("NAION") injuries (the "NAION MDL").[1] Novo Nordisk also agrees that the NAION cases should be centralized and assigned to the Honorable Judge Karen S. Marston in the Eastern District of Pennsylvania.

The reasons underlying the Panel's decision to centralize the gastrointestinal ("GI") cases in the Eastern District of Pennsylvania compel the same result here. Centralization of the NAION cases would help "avoid duplication of discovery[,] prevent inconsistent pretrial rulings, and . . . conserve the resources of the parties, their counsel and the judiciary."[2] Moreover, like the GI cases, the NAION cases involve numerous issues of common facts and law, offering similar (and perhaps even greater) efficiencies as those involved in the cases centralized in *In re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094 (the "GI MDL"). Furthermore, the growing nexus of NAION (and GI) cases in state courts heightens the need for centralization to reduce the complexities associated with cross-venue coordination.

In overseeing the GI MDL for the past two years, Judge Marston has acquired significant experience and knowledge regarding these GLP-1RA medicines and, in that time, has efficiently and diligently managed the litigation to help streamline the claims. Assigning the NAION MDL to Judge Marston will ensure that the parties benefit from her extensive experience with the GI MDL, driving efficiencies in a manner that cannot be accomplished in any other forum.

---

[1] *See In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1RAs) Non-Arteritic Anterior Ischemic Optic Neuropathy Prods. Liab. Litig.*, MDL 3163, ECF No. 1 (J.P.M.L. Aug. 19, 2025) (hereinafter "Lilly Motion" or "Lilly Mot.").

[2] *See* J.P.M.L. "*About the Panel – Origin and Purposes*" (September 11, 2025), https://www.jpml.uscourts.gov/about-panel.

## BACKGROUND

A.   **GLP-1RA Medicines.**

GLP-1RA medicines have been prescribed in the United States for nearly two decades and, during that time, have revolutionized the treatment of diabetes and obesity. GLP-1RAs act on GLP-1 receptors in various parts of the body—such as those in the gut, the pancreas, and the brain—and have a wide range of salutatory metabolic effects, including improving glycemic control, lowering weight, and decreasing cardiovascular risk.

The efficacy and safety of GLP-1RAs have been established over decades of use by millions of patients, as demonstrated by the prominent inclusion of these medicines at the top of treatment guidelines issued by leading medical organizations in the fields of diabetes and obesity treatment, including the American Diabetes Association,[3] the American Association of Clinical Endocrinology,[4] the American Heart Association,[5] and the American Gastroenterological Association.[6] Ongoing research suggests that this class of medicines may have even broader public health benefits, including in the treatment of heart failure, Alzheimer's disease, and various addictions.

---

[3] AM. DIABETES ASS'N, *Diabetes Care* (Dec. 2023), https://diabetesjournals.org/care/issue/46/12.

[4] Susan Samson et al., *American Association of Clinical Endocrinology Consensus Statement: Comprehensive Type 2 Diabetes Management Algorithm*, ENDOCRINE PRAC. (2023), https://www.endocrinepractice.org/article/S1530-891X(23)00034-4/fulltext.

[5] Joshua Joseph et al., *Comprehensive Management of Cardiovascular Risk Factors for Adults with Type 2 Diabetes: A Scientific Statement from the American Heart Association*, CIRCULATION (2022), https://www.ahajournals.org/doi/10.1161/CIR.0000000000001040?utm_campaign=sciencenews21-22&utm_source=science-news&utm_medium=phd-link&utm_content=phd-01-10-22.

[6] Eduardo Grunvald et al., *AGA Clinical Practice Guideline on Pharmacological Interventions for Adults with Obesity*, GASTROENTEROLOGY (2022), https://www.gastrojournal.org/action/showPdf?pii=S0016-5085%2822%2901026-5.

**B.    Novo Nordisk's GLP-1RAs.**

In 2010, Novo Nordisk introduced its first GLP-1RA medicine (Victoza) in the U.S. Since then, Novo Nordisk has received U.S. Food and Drug Administration ("FDA") approval for four additional GLP-1RA medicines. These medicines and their indications are summarized in **Table 1** below.

TABLE 1

| NAME | FDA APPROVAL DATE | ACTIVE INGREDIENT | DOSING | INDICATIONS |
|---|---|---|---|---|
| Victoza | 2010 | Liraglutide | Daily injectable | Type 2 diabetes; reduction of cardiovascular risk |
| Saxenda | 2014 | Liraglutide | Daily injectable | Chronic weight management |
| Ozempic | 2017 | Semaglutide | Weekly injectable | Type 2 diabetes; reduction of cardiovascular risk; reduction of risk of kidney disease |
| Rybelsus | 2019 | Semaglutide | Daily oral | Type 2 diabetes |
| Wegovy | 2021 | Semaglutide | Weekly injectable | Chronic weight management; reduction of cardiovascular risk; metabolic dysfunction-associated steatohepatitis |

The safety and efficacy of Novo Nordisk's GLP-1RA medicines have been evaluated in hundreds of clinical trials and real-world studies conducted over the past two decades. These include large scale cardiovascular outcomes trials such as the SELECT trial, which evaluated the safety and efficacy of Wegovy in over 17,000 patients and showed that Wegovy use was associated with a 20% reduction in death from cardiovascular causes, nonfatal myocardial infarction, or nonfatal stroke.[7]

---

[7] A. Michael Lincoff et al., *Semaglutide and Cardiovascular Outcomes in Obesity Without Diabetes*, N. ENG. J. MED., 2023;389:2221-32 (2023), https://www.nejm.org/doi/10.1056/NEJMoa2307563.

The most common adverse reactions reported in these trials were gastrointestinal effects such as nausea, vomiting, abdominal pain, constipation, and diarrhea. These and other known risks associated with these medicines are reflected in their FDA-approved product labeling, which has been reviewed and considered by FDA on dozens of occasions. There was no increased risk of NAION seen in any of Novo Nordisk's GLP-1RA clinical trial programs. As a result, NAION is not identified as a potential risk in any of the FDA-approved labels.

C.     **The Creation of the GI MDL.**

In February 2024 the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") created the GI MDL.

In creating the GI MDL, the Panel found centralization appropriate because:

> Each lawsuit contain[ed] substantially similar allegations about GLP-1 RAs (specifically, Ozempic, Wegovy, [and] Rybelsus []) and their alleged propensity to cause gastrointestinal injuries. All actions share[d] common issues of fact regarding whether defendants knew or should have known that their GLP-1 RA products can cause gastroparesis and other gastrointestinal injuries, whether defendants adequately warned plaintiffs or their prescribing physicians about the alleged dangers of these products, and whether defendants made false, misleading, or incomplete representations regarding the safety of these products.

*In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1RAs) Prods. Liab. Litig.*, 717 F. Supp. 3d 1370, 1373 (J.P.M.L. 2024) (hereinafter "*GLP-1RA Transfer Order*").

The JPML assigned the GI MDL to the District Court for the Eastern District of Pennsylvania because the venue would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of th[e] litigation." *Id.* This venue was particularly convenient because "Novo Nordisk Inc.'s headquarters is in nearby Plainfield, New Jersey, and . . . many of the witnesses and documents relating to the sales and marketing, regulatory

4

affairs, and safety and pharmacovigilance of Novo Nordisk's products will be located there."[8] *Id.* at 1374. The "Eastern District of Pennsylvania [would] also provide[] a convenient and accessible location for [a] nationwide litigation." *Id.*

Although the JPML generally is "wary of centralizing litigation on an industry-wide basis," the Panel recognized that severing the claims or Defendants from the GI MDL would create complexities and inefficiencies, including "result[ing] in duplicative discovery and pretrial proceedings" and requiring Plaintiffs in "combination actions" to "prosecute two actions for their alleged injury in two separate courts." *Id.* At the same time, the Panel was aware of the number of complexities a "multi-product and multi-defendant MDL" could entail, but recognized that these aspects could be managed by a judge "employ[ing] any number of techniques, such as establishing separate discovery and motion tracks to manage pretrial proceedings efficiently." *Id.*

Thus, The Panel centralized the GI MDL, assigning it originally to the Honorable Gene E. K. Pratter, but later reassigned the GI MDL to the Honorable Judge Karen S. Marston after Judge Pratter passed away. *See In re Glucagon-Like Peptide-1 Receptor Agonists Prods. Liab. Litig.*, MDL No. 3094, ECF No. 213 (J.P.M.L. June 6, 2024).

**D.     Judge Marston's Management of the GI MDL.**

In overseeing the GI MDL, Judge Marston has "employ[ed] any number of techniques," to organize the litigation, and to manage pretrial proceedings efficiently, including "establishing separate discovery and motion tracks." *GLP-1RA Transfer Order*, 717 F. Supp. 3d at 1374. As noted in Lilly's Motion, Judge Marston held a full day Science Day, where Judge Marston

---

[8] The JPML focused on Novo Nordisk's headquarters presumably because Novo Nordisk was named in the majority of pending cases. *See GLP-1RA Transfer Order*, 717 F. Supp. 3d at 1374 (noting Eli Lilly was named in only a little "more than a fifth (12 of 55) of the actions filed to [that] date").

5

developed a keen understanding of the medicines, their regulatory histories, and their mechanisms of action, among other issues. Judge Marston then frontloaded discovery on key cross-cutting threshold issues to help streamline the litigation and to focus on the viable claims. *See* Lilly Mot. at 4-5. Judge Marston also recently issued comprehensive orders addressing several threshold issues in the MDL, including the diagnostic requirements to maintain a claim alleging gastroparesis as an injury, and on Defendants' motion to dismiss the Master Complaint. *See id.*

Since being appointed, Judge Marston has held forty-one standing, weekly teleconferences for the parties to resolve any and all issues as they arise, update the court on progress, and keep the GI MDL on course, and an additional thirteen in-person conferences. Judge Marston also has entered numerous case management orders ("CMOs") to streamline discovery and to reduce inefficiencies,[9] including CMO 25[10] which establishes procedures to facilitate efficient and cooperative discovery and case management between the GI MDL and related state court actions.

E. NAION.

NAION is a condition typically characterized by sudden, unilateral, painless vision loss. NAION is a rare condition with an estimated incidence rate of two cases per 100,000 person-years.[11] The cause or causes of NAION remain unknown, though it is believed that reduced blood flow to the optic nerve may play a role. Established risk factors include age, hypertension,

---

[9] *See, e.g.,* CMOs 4 (preservation), 9 (privilege logging), 10 (privilege waiver), 11 (protective order and sealing process), 15 (ESI protocol), and 24 (deposition protocol for non-experts. *See In re: Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAs) Products Liability Litigation*, MDL No. 3094, ECF Nos. 113, 159, 186, 187, 212, and 369.

[10] *See id.* ECF No. 370.

[11] Michael S. Lee et al, *Incidence of Nonarteritic Anterior Ischemic Optic Neuropathy: Increased Risk Among Diabetic Patients*, OPHTHALMOLOGY 118(5):613-8 (2011), https://pmc.ncbi.nlm.nih.gov/articles/PMC3087834/.

hyperlipidemia, sleep apnea, obesity, diabetes, and coronary heart disease, among others.[12] These risk factors closely overlap with the indications for GLP-1RA medicines, complicating interpretation of data from observational studies and other real-world data sets.

i. *Emerging Potential Signal For NAION.*

As noted above, no signal for a potential risk of NAION was identified in Novo Nordisk's clinical trials,[13] and, until recently, no concerns regarding NAION existed. However, in July 2024, a study was published by researchers at Harvard University raising a potential concern about a risk of NAION in patients taking Novo Nordisk's semaglutide medicines, based on their research at a single neuro-ophthalmology center.[14] The authors noted that this was "the first [study], to our knowledge, to report an association between semaglutide and NAION" and that "the design of our study did not enable query into a causal relationship between the two."[15] Responses to the study commended the authors on their research but also raised concerns about the methodological limitations of the study and echoed the need for further research to confirm or refute these findings.[16]

---

[12] Bing Liu et al., *Risk Factors for Non-Arteritic Anterior Ischemic Optic Neuropathy: A Large-Scale Meta-Analysis*, 8 FRONTIERS IN MED. 1, 8 (2021), https://tinyurl.com/3svr5hr4.

[13] *See, e.g.*, Giovanni A. Silverii, et al., *Glucagon-like Peptide 1 (GLP1) Receptor Agonists and Risk for Ischemic Optic Neuropathy: A Meta-Analysis of Randomised Controlled Trials*, 27 DIABETES OBES. METAB. 1005, 1008 (2025) ("Our meta-analysis failed to detect a significant detrimental effect of GLP1-RA therapy on ischemic optic neuropathy in randomised clinical trials.")), https://pmc.ncbi.nlm.nih.gov/articles/PMC11701179/.

[14] Jimena T. Hathaway et al., *Risk of Nonarteric Anterior Eschemic Optic Neuropathy in Patients Prescribed Semaglutide*, JAMA OPHTHALMOLOGY, 2024, https://jamanetwork.com/journals/jamaophthalmology/fullarticle/2820255.

[15] *Id.*

[16] *See* Susan P. Mollan, *Semaglutide and Nonarteritic Anterior Ischemic Optic Neuropathy*, JAMA OPHTHALMOL 142(8):740-741 (2024); *see also* Awadhesh K. Singh et al., *Nonarteritic Anterior Ischemic Optic Neuropathy and Semaglutide: What is This All About?*, J. ASSOC. PHYSICIANS INDIA 72.8:11-12 (2024).

Since July 2024, numerous studies have attempted to evaluate the relationship between GLP-1RA use and NAION. These studies have yielded inconsistent results, with some reporting an association and others finding no evidence of a treatment-related effect.[17] To date, no scientific conclusions have been drawn as to whether a cause-and-effect relationship exists. In July 2025, the American Academy of Ophthalmology and the North American Neuro-Ophthalmology Society—two of the leading medical societies in the ophthalmology field—issued a statement confirming that causality has not been established: "A review of the available data has not established that semaglutide causes NAION, only a potential link between the two."[18]

F. **NAION Litigations.**

Shortly after the July 2024 publication, Plaintiffs began filing NAION cases in federal and state courts against Novo Nordisk, and later Eli Lilly. Over time, the filings have increased both in volume and frequency, and that trend is expected to continue.

i. *NAION Federal Cases.*

There are currently twenty-two NAION cases filed in federal court: 18 in the District of New Jersey, 3 in the GI MDL, and 1 in the Northern District of Texas. The earliest filed NAION case was in the Northern District of Texas in September 2024.[19] From that time through May

---

[17] *Compare* David C. Klonoff et al., *Real-World Evidence Assessment of the Risk of Non-Arteritic Anterior Ischemic Optic Neuropathy in Patients Prescribed Semaglutide*, J. DIABETES, SCIENCE & TECHNOLOGY (2024), https://pmc.ncbi.nlm.nih.gov/articles/PMC11529103/, *with* Kin W. Fung et al., *GLP-1RAs and Risk of Nonarteritic Anterior Ischemic Optic Neuropathy in Older Patients With Diabetes*, JAMA OPHTHALMOLOGY (2025).

[18] AM. ACAD. OPHTHALMOLOGY & N. AM. NEURO-OPHTHALMOLOGY SOC'Y, *Should You Stop Taking GLP-1 Drugs Like Ozempic if You Experience Vision Loss? Nation's Ophthalmologists Respond to European Agency's New Recommendation - American Academy of Ophthalmology*, July 7, 2025, https://www.aao.org/newsroom/news-releases/detail/should-you-stop-taking-glp-1-drugs-like-ozempic.

[19] *Golmon v. Novo Nordisk Inc. et al,* No. 3:24-cv-02368 (N.D. Tex. Sep. 19, 2024).

2025, four additional cases were filed in federal court.[20] But since June 2025, 16 additional NAION cases have been filed, primarily in the District of New Jersey, and Plaintiffs' counsel there has indicated they expect hundreds more to be filed in the coming months.[21] Most of the federal NAION cases, including all of those filed in the District of New Jersey, have been filed by Seeger Weiss and Morgan & Morgan, who are both Co-Lead Counsel in the GI MDL. Relatedly, there are three cases in the GI MDL alleging both GI and NAION injuries, several NAION complaints in the District of New Jersey alleging GI injuries, and complaints in the GI MDL that contain NAION allegations.[22]

After the Lilly Motion was filed, all NAION cases pending in federal courts other than the multi-injury (GI and NAION) cases in the Eastern District of Pennsylvania have been stayed, pending the Panel's ruling.[23] Prior to those stays, none of the federal actions proceeded past early stages of litigation, involved minimal or no discovery, and there have been no rulings on dispositive pretrial motions.

   ii. *NAION State Cases.*

There are currently forty-nine NAION cases filed in state courts. Most of those (47) are in New Jersey state court, where Plaintiffs have applied for centralization in a multicounty litigation ("MCL"). Plaintiffs have also applied for an MCL to centralize the more than 800 GI cases filed in New Jersey state court in front of the same judge as the NAION MCL. On August 29, 2025, both Lilly and Novo Nordisk filed comments in support of New Jersey Plaintiffs' MCL

---

[20] *See* Lilly Mot. at 7-8.

[21] *See id.* 5-8.

[22] *See id.* 6-8.

[23] *See Kane v. Novo Nordisk A/S, et al.*, Case No. 3:24-cv-11384-ZNQ-RLS, ECF No. 41 (D.N.J. Aug. 25, 2025); *Golmon v. Novo Nordisk Inc.*, Case No. 3:24-cv-02368-K, ECF No. 58 (N.D. Tex. Aug. 25, 2025).

9

applications, and agreed that both groups of cases should be centralized together in front of the same judge—just as they do here with the federal cases—to help ensure efficiency, avoid duplication of discovery efforts, and consolidate court involvement to minimize coordination complexities.

## ARGUMENT

**I. These Cases Should Be Centralized in the Eastern District of Pennsylvania Before Judge Marston.**

The reasoning that led the JPML to centralize the GI MDL in February 2024 applies with equal, and perhaps even greater, force here. Similar common issues of fact and law are present here, as are the numerous efficiencies the Panel identified in forming the GI MDL. *GLP-1RA Transfer Order*, 717 F. Supp. 3d at 1374.

For all of the reasons underlying the purposes of centralization—increasing efficiency, avoiding inconsistency, preventing duplication of efforts and time, and minimizing the burden on the transferee court and parties—the NAION MDL should be centralized in the Eastern District of Pennsylvania under Judge Marston, who is familiar with the medicines at issue, the science, the parties, and who has shown that she can "steer [an MDL] on a prudent and expeditious course." *Id.* at 1374-75.

**A. Centralization Is Appropriate.**

The Panel's analysis regarding common questions of fact that compelled centralization of the GI MDL applies equally here:

> Each lawsuit contains substantially similar allegations about GLP-1 RAs (specifically, Ozempic, Wegovy, Rybelsus, Trulicity, and/or Mounjaro) and their alleged propensity to cause [NAION] injuries. All actions share common issues of fact regarding whether defendants knew or should have known that their GLP-1 RA products can cause [NAION], whether defendants adequately warned plaintiffs or their prescribing physicians about the alleged dangers of these products, and whether defendants made false, misleading, or incomplete representations regarding the safety of these products.

*Id.* at 1373. The NAION complaints contain nearly identical allegations regarding prescription of GLP-1RAs, Plaintiffs' alleged injuries, and the alleged causes of action. Moreover, there are numerous common issues of science and fact relevant to both MDLs, including with respect to the mechanisms of action of the medicines, their safety and efficacy profiles, and their labeling and regulatory history. *Id.* Finally, as with the GI petition, Plaintiffs here "suggest that related cases will" increase significantly in number, which is to be expected as "prescriptions of GLP-1RAs have [continued to] increase[] dramatically in recent years.[24] *Id.* In light of these prospects, "alternatives to centralization—such as informal cooperation between the parties and coordination among the involved courts" is not "preferable to centralization." *Id.* at 1374; *see also In re Covidien Hernia Mesh Prods. Liab. Litig.*, 607 F. Supp. 3d 1356, 1357 (J.P.M.L. 2022) (finding centralization appropriate where there was a "credible prospect of additional actions, the increase in number of counsel (though small), the concomitant increase in burden on party and judicial resources, and the increased need for federal-state coordination").

### B. The Efficiencies Driving Centralization Will Be Best Accomplished In The Eastern District of Pennsylvania Before Judge Marston.

Novo agrees with Lilly's arguments regarding the general efficiency and convenience gained from centralizing the NAION complaints, including reducing the burden of fact and expert discovery, avoiding inconsistent rulings, and helping to streamline what is bound to be a complex litigation. Novo Nordisk is aware that the majority of NAION cases have been filed in the District

---

[24] *Compare GLP-1RA Transfer Order*, 717 F. Supp. 3d at 1373 ("According to some parties, nearly two percent of the U.S. population has been prescribed a GLP-1 RA.") *with* Rand Education & Labor, *Nearly 12 Percent of Americans Have Used GLP-1 Weight Loss Drugs; Medications Are Most Used by Women Aged 50 to 64* (August 6, 2025), https://www.rand.org/news/press/2025/08/nearly-12-percent-of-americans-have-used-glp-1-weight.html.

of New Jersey and are pending before Judge Zahid N. Quraishi, who himself is an experienced and highly respected jurist and is undoubtedly qualified to manage an MDL if the NAION cases were centralized and assigned to him. However, considering her extensive experience with the medicines at issue here, the significant overlap in Plaintiffs' counsel, and the numerous common issues between the GI and NAION MDLs, assignment to Judge Marston in the Eastern District of Pennsylvania provides the most efficient option for resolving this new wave of cases related to the same GLP-1RA medicines.[25]

> i. *Judge Marston Is Uniquely Positioned to Oversee a NAION MDL.*

The scientific and regulatory history of semaglutide and other GLP-1RAs is complex, spanning more than three decades of research, clinical use, and regulatory oversight. Over the past two years, while overseeing the GI MDL, Judge Marston has acquired extensive knowledge regarding these medicines, both through her day-to-day oversight of the MDL, including the many hearings that have involved extensive discussions of these medicines, how they came to market, and how they work, and through participation in Science Day and the first round of *Daubert* hearings.[26]

The first round of *Daubert* hearings resulted from Judge Marston's innovative procedural orders frontloading certain cross-cutting issues, including diagnostic criteria. Similar vetting processes, including as to diagnostic criteria, may be needed in the NAION MDL. This experience

---

[25] For reference, the District of New Jersey is one of the busiest districts in the federal judiciary. The district ranks first in cases pending with 91,711. *Federal Court Management Statistics*, U.S. Courts (June 30, 2025), https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile0630.2025.pdf.

[26] Judge Marston's 78-page opinion on cross-cutting issue one demonstrates some of the knowledge and familiarity Judge Marston has acquired through the GI MDL in areas like the science and regulatory history underlying the medicines as well as their recognized and still theorized mechanisms of action. *See generally In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1RAs) Prods. Liab. Litig.*, 2025 WL 2396801 (E.D. Pa. Aug. 15, 2025).

puts Judge Marston in a unique position to efficiently and effectively oversee this new wave of cases.

Moreover, as described in Lilly's Motion, the parties' briefing on Defendants' motion to dismiss Plaintiffs' 850-paragraph Master Complaint, and her analysis of that briefing provides Judge Marston with a unique insight into the legal issues and arguments that undoubtedly will arise in the NAION cases, which are filed by many of the same counsel, involve the same defendants and medicines, and generally are based on the same legal theories as the earlier GI cases.

Furthermore, in overseeing the GI MDL, Judge Marston has issued numerous CMOs to provide a roadmap for the parties to streamline and organize the litigation. Many of those CMOs have been negotiated vigorously between, and agreed to, by many of the same counsel involved in the NAION cases. Indeed, as illustrated in Lilly's Motion, Plaintiffs' counsel in the GI MDL have filed the bulk of federal NAION cases that would be centralized here. *See* Lilly Mot. at 16-17. Thus, several of these CMOs could be adopted fully into, or adapted for, the NAION MDL under Judge Marston's purview, saving the court and the parties significant time, effort, and resources. These CMOs include:

**Discovery Orders.**

- CMO 4 – Preservation Order;
- CMO 9 – Privilege Logging;
- CMO 10 – Rule 502(d) Privilege Waiver;
- CMO 11 – Protective Order and Sealing Process;
- CMO 15 – ESI Protocol;
- CMO 24 – Deposition Protocol for Non-Experts; and
- CMO 26 – Plaintiffs' ESI Protocol.

**Other Applicable Orders.**

- CMO 2 – Pro Hac Vice Appearances;
- CMO 14 – Direct Filing and Service of Complaints; and
- CMO 25 – Coordination Order.

In addition to these CMOs, the informal procedures Judge Marston has established in the GI MDL, including weekly status conferences, could be adapted to accommodate NAION-specific issues, thereby further reducing the burden on the court and the parties.

> ii. *Judge Marston Is In an Ideal Position to Facilitate Cross-Forum Coordination.*

Assigning the NAION MDL to Judge Marston, or expanding the scope of the existing GI MDL to include NAION cases, would also help facilitate coordination with the growing number of state court cases and venues, as well as allowing the parties and the court to more easily leverage the discovery and document production completed over the past two years.

As noted above, Plaintiffs recently filed, and Novo and Lilly supported, applications for both a GI and NAION MCL in New Jersey state court. Those MCLs will soon include more than 1,000 Plaintiffs. To help simplify the MCLs and avoid inconsistencies and duplicative efforts, all parties have requested the GI and NAION MCLs be centralized in front of the same judge. The same approach would be most efficient and appropriate with respect to the federal cases.

Coordination of both the GI and NAION MDL in front of Judge Marston reduces complexity by limiting the number of judges (and thus the effects of differing local and district rules) and fora in which the parties would need to litigate. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 220 F. Supp. 3d 1356, 1358 (J.P.M.L. 2016) ("Coordination with the state court actions will be enhanced if only one federal judge needs to communicate with the multiple state court judges overseeing the [related] litigation."); *see also In re Covidien Hernia Mesh Prods. Liab. Litig.*, 607 F. Supp. 3d at 1357-58 ("In particular, the significant growth in state court litigation supports creation of a single federal court proceeding.").

Assignment to Judge Marston also benefits Plaintiffs in both federal and state courts. For Plaintiffs in federal court, assignment to Judge Marston would help ensure consistent procedures

and avoid inconsistent rulings on issues of discovery that could result in divergent approaches, duplicative efforts, or require extensive efforts to address the discordant discovery orders. Plaintiffs in state court can achieve the same benefits as their federal counterparts through Judge Marston's CMO 25, which enables state court judges to authorize parties in their cases to participate in coordinated discovery with the GI MDL, including with the same Special Master to resolve discovery disputes.

Additionally, assigning the NAION MDL to Judge Marston would simplify the management of cases involving both GI and NAION claims. Several of these cases already are pending in the GI MDL that allege both GI and NAION injuries.[27] Creating two separate MDLs, with separate judges, could create confusion regarding where such cases should be filed and potentially would require Plaintiffs to do precisely what this court tried to prevent in centralizing the GI MDL—"prosecute two actions for their alleged injuries in two separate courts."[28] *GLP-1RA Transfer Order*, 717 F. Supp. 3d at 1374.

Finally, assigning the NAION MDL to Judge Marston would allow the parties and the court to most efficiently leverage discovery and document production completed to date, minimizing the need for repeated depositions, duplicative document requests, and redundant motion practice. It also would ensure that Judge Marston has the ability to coordinate activity in both MDLs to conserve resources and to allow for efficient resolution of both sets of cases.

---

[27] There are also several GI and NAION complaints filed in the District of New Jersey and the Eastern District of Pennsylvania that contain language pertaining to both GI and NAION injuries. While some may just be typographical errors and meant to allege only one type of injury, that remains unclear to this point.

[28] These issues are already appearing as a result of the separate state and federal actions, with the same plaintiff filing NAION and GI claims in different courts represented by different counsel. *Compare Petker v. Novo Nordisk Inc*, Case No. 2:25-CV-04856 (E.D. Pa. Aug. 25, 2025) (GI complaint), *with Petker v. Novo Nordisk Inc.*, Superior Court of New Jersey, Middlesex County, Law Division, Case No. MID-L-006376-25, Sep. 4, 2025 (NAION complaint).

### C. The Eastern District of Pennsylvania Remains Convenient.

In its prior order, the Panel determined that the Eastern District of Pennsylvania was appropriate as it was near "Novo Nordisk['s] headquarters" and thus near "many of the [relevant] witnesses and documents," and because it "provides a convenient and accessible location for [a] nationwide litigation." *Id.* at 1374. Here, all of these factors remain true, and in fact are strengthened by the existence of the GI MDL.

Novo Nordisk's headquarters remain near Philadelphia, and Novo Nordisk is once again named in the majority (95%) of NAION claims to date, as was the case when the Panel considered the request for the GI MDL where Novo was named in the majority (80%) of those cases. *Id.* Moreover, Plaintiffs' and Defendants' counsel in the GI MDL have been litigating in the Eastern District of Pennsylvania for more than a year and a half now; litigating the NAION cases in that same forum would maintain the status quo and require little adjustment from the parties and counsel currently involved.

### CONCLUSION

For the foregoing reasons, Novo Nordisk respectfully requests that this Panel enter an order transferring the NAION cases pending in federal court to the Honorable Judge Karen S. Marston in the U.S. District Court for the Eastern District of Pennsylvania for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Dated: September 12, 2025

Respectfully Submitted,

*/s/ Loren H. Brown*
Loren H. Brown
Lucas P. Przymusinski
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor

New York, NY 10020-1104
Telephone: (212) 335-4846
Facsimile: (212) 335-4501
loren.brown@us.dlapiper.com
lucas.przymusinski@us.dlapiper.com

Ilana H. Eisenstein
Raymond M. Williams
**DLA PIPER LLP (US)**
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Telephone: (215) 656-3300
Facsimile: (215) 606-3301
ilana.eisenstein@us.dlapiper.com
raymond.williams@us.dlapiper.com

Matthew A. Holian
Katherine W. Insogna
**DLA PIPER LLP (US)**
33 Arch Street, 26th Floor
Boston, MA  02110
Telephone: (617) 406-6000
Facsimile: (617) 406-6100
matt.holian@us.dlapiper.com
katie.insogna@us.dlapiper.com

*Attorneys for Novo Nordisk A/S and Novo Nordisk Inc.*